**Debra R. MOORE, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY and Larry Heal, Appellees.**

No. S–8574.

Supreme Court of Alaska.

Jan. 21, 2000.

Rehearing Denied March 21, 2000.

Sanford M. Gibbs, Brown, Waller & Gibbs, Anchorage, and P. Dennis Maloney, P. Dennis Maloney, P.C., Anchorage, for Appellant.

Audrey H. Faulkner, Wilkerson & Associates, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Debra Moore bought a house on the Matanuska River, and insured it under the National Flood Insurance Program (NFIP, or "the Program") through Allstate Insurance Company. Fearing her house would be condemned due to rising waters of the Matanuska River, Moore moved her house and filed for compensation. Moore received forty percent of the house's market value. Asserting that she had been promised more, she sued Allstate and its agent in state court on a variety of claims, including misrepresentation and fraud. The superior court, holding that federal courts have exclusive jurisdiction over NFIP claims, granted summary judgment and attorney's fees to Allstate and its agent. We reverse because the federal government has not retained exclusive jurisdiction over fraud and misrepresentation claims against flood insurers.

### II. FACTS AND PROCEEDINGS

In the late summer and fall of 1992 Debra Moore negotiated the purchase of a house on the Matanuska River, near Palmer. Because of the inherent flood risks, Moore sought flood insurance. After one insurer apparently turned her down, she purchased insurance from Larry Heal, an Allstate agent who was then servicing the previous owners. According to Moore, Heal told her that if she suffered a loss due to flood or erosion, Allstate's policy would cover her "for [the] full replacement value of the house." Moore then purchased the house in November 1992.

In June 1994 the Matanuska River began eroding the land near Moore's house, and Moore decided to relocate her home. She first made a claim under her policy for relocation relief, which the Federal Emergency Management Agency (FEMA) denied.[1] She then requested that the Matanuska–Susitna Borough condemn her house, and when it did so, she appealed the denial of her FEMA claim. This time her claim was successful. On August 8, 1995, FEMA granted Moore benefits equal to forty percent of the fair market value of her house.

Disappointed with this award, Moore filed suit against Heal and Allstate in state superior court on September 27, 1996. She sought damages on various theories: breach of contract, bad faith, failure to refund her premium (which she considered to be an overcharge), intentional or negligent misrepresentation, unfair trade practices, negligence, respondeat superior, estoppel, and exemplary damages.

When Heal and Allstate moved for summary judgment, the superior court dismissed Moore's claims for lack of subject matter jurisdiction, holding that the federal district court had original exclusive jurisdiction over her claims. It awarded Allstate $18,287.50 in attorney's fees and $4,345.15 in costs.

Moore appeals the dismissal of her claims, and the attorney's fees award.[2]

## III. DISCUSSION

### A. Standard of Review

The standard of review for an appeal from summary judgment is de novo.[3] We will affirm a summary judgment if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law.[4] When making this determination, we draw all reasonable inferences in favor of the non-moving party.[5] If in reviewing a summary judgment we must answer questions of law, we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[6] Moreover, we may affirm a grant of summary judgment on grounds other than those advanced by the lower court or parties.[7]

### B. Federal Jurisdiction

This case hinges on the scope of the National Flood Insurance Act (NFIA, or "the Act").[8] In an effort to provide flood insurance at reasonable rates to people living in flood-prone areas, Congress enacted the Act in 1968.[9] The Act created the National Flood Insurance Program under which the government works with private insurers to subsidize the cost of flood insurance.[10] For the first decade of its existence, the Program was operated under Part A of the Act [11] and "through a pool of private insurers under the supervision of and with financial support from the Department of Housing and Urban

---

**1.** The Upton–Jones Amendment to the National Flood Insurance Act was passed in 1988. *See* Pub.L. No. 100–242, § 544, 101 Stat. 1815 (1988). It provided for demolition or relocation of a structure *before* its imminent collapse. *See id.* Following the amendment, if a house was demolished, the owner would receive 110% of its value (presumably including compensation for the cost of demolition), and if it was relocated, the owner would receive 40%. *See id.* The Upton–Jones Amendment, formerly at 42 U.S.C. § 4013(c), was repealed in 1994. *See* Pub.L. No. 103–325, § 552(a), 108 Stat. 2160 (1994).

**2.** Allstate argues that Moore is only appealing dismissal of her misrepresentation and negligence claims. But the first page of Moore's opening brief makes it clear that she is appealing the dismissal of "misrepresentation and related state claims." Her brief also later refers explicitly to "breach of fiduciary duty." We treat her appeal as encompassing all of her original claims, as originally pled.

**3.** *See Ganz v. Alaska Airlines, Inc.,* 963 P.2d 1015, 1017 (Alaska 1998).

**4.** *See Parson v. Marathon Oil Co.,* 960 P.2d 615, 618 (Alaska 1998).

**5.** *See id.*

**6.** *See Ganz,* 963 P.2d at 1017.

**7.** *See Ward v. Lutheran Hosps. & Homes Soc'y of Am., Inc.,* 963 P.2d 1031, 1034 (Alaska 1998).

**8.** *See* 42 U.S.C. §§ 4001–4129 (1994).

**9.** *See Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161, 165 n. 2 (3d Cir.1998); *Berger v. Pierce,* 933 F.2d 393, 394–95 (6th Cir.1991).

**10.** *See Van Holt,* 163 F.3d at 165 n. 2.

**11.** *See* 42 U.S.C. §§ 4051–56 (1994).

Development." [12] In 1978 Part A was phased out and Part B of the Act [13] was implemented, bringing about two important changes: (1) the federal government took on a greater portion of the financial burden of the insurance coverage,[14] and (2) the Federal Emergency Management Administration assumed managerial responsibility for the payment of all flood insurance claims.[15] In 1983 FEMA created the misleadingly named "Write Your Own" program (WYO), under which private insurance companies may sell a FEMA-drafted Standard Flood Insurance Policy (SFIP).[16] The Federal Emergency Management Administration and the federal government continue to bear the primary financial burden of the program, but under the WYO program, private insurers are allowed to make money by facilitating the sale of policies.[17]

When it issued the policy to Moore, Allstate was acting as a write-your-own insurer under the National Flood Insurance Program, selling a standard flood insurance policy subject to management by the Federal Emergency Management Administration under Part B.

The principal issue here is whether the federal courts have exclusive, original jurisdiction over tort claims against NFIP WYO insurers. The superior court held that because all of Moore's tort claims concerning contract negotiations are claims arising out of the contract, the federal courts have jurisdiction over all NFIP-related claims. Allstate agrees, but Moore argues that tort claims do not arise out of the insurance contract, and that state courts therefore have jurisdiction.

1. *WYO insurers fall under section 4072, not section 4053.*

Congress included in the National Flood Insurance Act two provisions granting federal courts exclusive subject matter jurisdiction in particular types of cases connected to the insurance program.[18]

Suits against the insurance companies taking part in the original pool under Part A are addressed in 42 U.S.C. § 4053.

The superior court dismissed Moore's claims on the ground that section 4053 grants exclusive federal jurisdiction in NFIP cases against private insurers. Section 4053 reads:

The insurance companies and other insurers which form, associate, or otherwise join together in the pool under this part may adjust and pay all claims for proved and approved losses covered by flood insurance in accordance with the provisions of this chapter and, *upon the disallowance by any such company or other insurer of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant,* within one year after the date of mailing of notice of disallowance or partial disallowance of the claim, *may institute an action on such claim against such company or other insurer in the United States district court* for the district in which the insured property or the major part thereof shall have been situated, *and original exclusive jurisdiction is hereby conferred upon such court* to hear and determine such action without regard to the amount in controversy.[19]

But section 4053 does not apply here. As the Third Circuit held last year in *Van Holt v. Liberty Mutual Fire Insurance Co.,*[20] "42

---

**12.** *Spence v. Omaha Indem. Ins. Co.,* 996 F.2d 793, 794 n. 1 (5th Cir.1993).

**13.** *See* 42 U.S.C. §§ 4071–72 (1994).

**14.** *See Van Holt,* 163 F.3d at 165.

**15.** *See id.; Berger,* 933 F.2d at 395.

**16.** *See Van Holt,* 163 F.3d at 165–66. The SFIP may not be altered by WYO insurers without permission from the Federal Insurance Administrator. *See id.*

**17.** *See id.* at 165.

**18.** *See* 42 U.S.C. §§ 4053, 4072 (1994); *see also Van Holt,* 163 F.3d at 166.

**19.** 42 U.S.C. § 4053 (emphasis added). The words "original exclusive" were added in 1983. *See* Pub.L. No. 98–181, § 451(d)(3), 97 Stat. 1153 (1983).

**20.** 163 F.3d 161 (3d Cir.1998).

U.S.C. § 4053 only pertains to disputes over policies issued under a Part A program." [21] When Part A was phased out, the use of a pool of private insurers also ended and so did the applicability of section 4053. Allstate did not act here as a Part A pool insurer, but as a private WYO insurer under Part B. It thus acted in a capacity Congress never addressed when it wrote the Act.[22] Any basis for exclusive federal jurisdiction over NFIP cases against private WYO insurers must therefore be found elsewhere.

■ Section 4072 contains the other jurisdictional grants. That section reads:

In the event the program is carried out as provided in section 4071 of this title [allowing for implementation of Plan B], the Director shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and *upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant,* within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, *may institute an action against the Director on such claim in the United States district court* for the district in which the insured property or the major part thereof shall have been situated, *and original exclusive jurisdiction is hereby conferred upon such court* to hear and determine such action without regard to the amount in controversy.[23]

Although section 4072 only addresses suits against the federal government, the federal courts have interpreted it more broadly. In *Van Holt,* the Third Circuit held that "construing 42 U.S.C. § 4072 narrowly to confer jurisdiction only to cases formally against FEMA would cause anomalous results." [24] Another court noted that "[al]though neither [§ 4053 nor § 4072] expressly provides for actions against WYO companies, they demonstrate unequivocal congressional intent that actions by disappointed claimants under the NFIP be restricted to the federal courts." [25] The *Van Holt* court and others have accordingly held that section 4072 "vests district courts with exclusive jurisdiction over suits by claimants against WYO companies based on partial or total disallowance of claims for insurance arising out of the [NFIA]." [26]

The federal courts generally seem to agree that section 4072 confers original, exclusive jurisdiction on federal district courts to hear claims for losses covered by a WYO insurance contract.[27]

2. *The federal government has not preempted state involvement in the field of flood insurance.*

■ Allstate argues that section 4072 is not the only source of federal jurisdiction over WYO insurers. Allstate claims that federal preemption of state law here "is mandated because the federal government intended to occupy the entire field of flood insurance." That result would theoretically bar Moore from making any of her claims in state court. Allstate bases its argument on *West v. Harris,*[28] where the Fifth Circuit stated:

Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and

21. *Id.* at 166. *See also Spence,* 996 F.2d at 795 n. 12.

22. *See Webb v. Aetna,* 1997 WL 433500 at *3 n. 4 (E.D.La.1997) ("The WYO program is a creation not of Congress but of FEMA. Therefore, it is not surprising that the statute does not refer expressly to actions against WYO companies.") (citations omitted).

23. 42 U.S.C. § 4072 (emphasis added). The words "original exclusive" were added in 1983. *See* Pub.L. No. 98–181, § 451(d)(5), 97 Stat. 1153 (1983).

24. 163 F.3d at 167.

25. *See Webb,* 1997 WL 433500 at *3.

26. *Id. See also Spence,* 996 F.2d at 795. *But see Froehlich v. Catawba Ins. Co.,* 10 F.Supp.2d 597, 598 n. 2 (W.D.Va.1998) (continuing to apply section 4053 to cover Plan B WYO insurers).

27. *See, e.g., Van Holt,* 163 F.3d at 167; *Cohen v. State Farm Fire & Cas.,* 68 F.Supp.2d 1151, 1159–60 (C.D.Cal.1999); *Friedman v. South Carolina Ins. Co.,* 855 F.Supp. 348, 350 (M.D.Fla. 1994).

28. 573 F.2d 873 (5th Cir.1978).

since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law.[29]

But *West* concerned coverage, and it discusses preemption entirely in that context.[30] Its holding states the point well: "In sum, federal law controls disputes over the coverage of insurance policies issued pursuant to the National Flood Insurance Act...."[31]

■ There are indications that the federal government did not preempt all state involvement in flood insurance; as Moore notes, the WYO regulations require state licensing[32] and allow for state auditing and regulatory control.[33] And in *Offices of Vincent Vitale, P.C. v. Tabbytite*,[34] we held that "[w]here a federal statute is silent on the question of jurisdiction, state and federal courts have concurrent jurisdiction."[35] In accordance with that opinion, we hold that the federal government has not preempted all state involvement in the field of flood insurance.

We conclude that section 4072 provides the only possible basis for finding exclusive federal jurisdiction here. In the words of section 4072, the Federal Emergency Management Administration Director makes payment of "claims for proved and approved losses covered by flood insurance," and when the director disallows a claim, federal courts have jurisdiction to hear an action "on such claim."[36] As noted above, section 4072 applies with equal force to private, WYO insurers.

3. *Congress asserted jurisdiction in section 4072 to provide for the uniform interpretation of policies, and to protect federal funds.*

As we have seen, the purpose of federal jurisdiction in this area was at least in part to promote the uniform interpretation of the standard flood insurance policy.[37] But there is apparently another rationale underlying the grant of jurisdiction to federal courts, one that is applicable even when the explicit interpretation of the contract is not at issue.

In *Van Holt*, the plaintiffs sued their WYO insurer, Liberty Mutual, for bad faith and consumer fraud in connection with an NFIP policy.[38] They based their complaint on Liberty Mutual's "failure to pay their claims and the company's allegation that the claims were fraudulent."[39] On appeal from the district court, the Third Circuit raised the issue of subject matter jurisdiction sua sponte.[40] Ultimately concluding that section 4072 applied, thus granting original, exclusive jurisdiction to the federal district court, the Third Circuit based its decision on the federal government's obligation to compensate Liberty Mutual in case of loss:

> Although the Van Holts' suit does not explicitly allege that Liberty Mutual violated the insurance policy contract, their lawsuit should be deemed an action subject to the Act. The statutory and regulatory scheme reveals that Congress would have intended to give the district court original exclusive jurisdiction had Congress considered the issue. Most importantly, federal funds are at stake in this suit. Congress would want federal courts to adjudicate disputes over

---

29. *Id.* at 881.

30. *See id.* at 875–79, 881.

31. *Id.* at 881.

32. *See* 44 C.F.R. § 59.1.

33. *See* 44 C.F.R. Pt. 62, App. B ("WYO Companies are subject to audit, examination, and regulatory controls of the various states.").

34. 942 P.2d 1141 (Alaska 1997).

35. *Id.* at 1147.

36. The words "original exclusive" were added in 1983. *See supra* note 24.

37. *See Nelson v. Becton*, 929 F.2d 1287, 1291 (8th Cir.1991) ("The [SFIPs] are by regulation uniform throughout the country. Their coverage should not vary from state to state depending upon the vagaries of state law." (citations omitted)); *West*, 573 F.2d at 881.

38. *See Van Holt*, 163 F.3d at 164.

39. *Id.*

40. *See id.* at 166.

federal flood insurance policies for which the federal government would be responsible for reimbursing the WYO company if the claimant prevails. Although the Van Holts' claims sound in tort, their causes of action alleging impropriety in the investigation and adjustment of their insurance claim are intimately related to the disallowance of their insurance claim.... *We now determine that Congress, had it considered the specific question, would have intended to confer original exclusive jurisdiction on the district court over claims sounding in tort arising out of the investigation or adjustment of insurance policies arising out of the administration and sale of insurance under the NFIA. We reach this conclusion because Liberty Mutual is a fiscal agent of the United States, FEMA would have borne the costs of the plaintiffs' insurance claim, and FEMA is obliged to reimburse Liberty Mutual for defense costs.*[41]

The Third Circuit thus reasoned that when federal funds are at stake, the federal courts have exclusive jurisdiction.

4. *Federal funds are at stake when the federal government has agreed to indemnify the WYO insurers per the CFR.*

The Federal Emergency Management Administration's regulations limit its liability to WYO insurers and the insured.[42] The regulations specify that WYO companies are not agents of the federal government.[43] FEMA is, however, obligated to cover certain specific costs of the insurance arrangement; most notably, FEMA bears the burden of paying out claims after depletion of the minimal WYO insurer set-aside funds for payment of claims.[44]

The Federal Emergency Management Administration is further generally obligated to cover "payments as a result of litigation which arises under the scope of" the WYO–FEMA arrangement.[45] The regulations limit and clarify this obligation:

(1) FEMA is not required to reimburse WYO insurers for "damages caused by inadvertent delay, error, or omission made in connection with any transaction" under the arrangement;[46] and

(2) FEMA has a process for denying a WYO insurer's claim if it "is grounded in actions by the Company that are outside the scope of this Arrangement, the National Flood Insurance Act, and 44 CFR chapter 1, subchapter B, and/or involve issues of insurer/agent negligence."[47]

These limitations suggest that the federal government would not indemnify a WYO insurer for a loss caused by fraud or misrepresentation. It appears to us that fraud and misrepresentation are "outside the scope of this Arrangement." Moreover, considering that the regulations do not cover the negligence of insurers or their agents, it seems highly unlikely that willful acts such as fraud or intentional misrepresentation would be covered. Finally, we note that the "Arrangement" specifically excludes errors and omissions from its scope.[48]

In *Spence v. Omaha Indemnity Insurance Co.*,[49] the Fifth Circuit held that a suit for tortious misrepresentation of the contents of an SFIP was not a suit arising under the SFIP.[50] The insureds there sued their WYO insurer in federal court for "fraud arising out of representations" by its agents.[51] The insureds won, and the insurer, Omaha, appealed on the ground that the federal statute of

41. *Id.* at 167 (emphasis added).

42. *See* 44 C.F.R. Pt. 62, App. A.

43. *See* 44 C.F.R. § 62.23(g); 44 C.F.R. Pt. 62, App. A, art. XVI (as amended, 1998).

44. *See* 44 C.F.R. Pt. 62, App. A, art. III(D)(1).

45. *Id.* at art. III(D)(2).

46. *Id.* at art. IX.

47. *Id.* at art. III(D)(4).

48. *See id.* at art. IX.

49. 996 F.2d 793 (5th Cir.1993).

50. *See id.* at 796–97.

51. *Id.* at 794.

limitations barred the suit.[52] In addressing the limitations issue, the Fifth Circuit applied Texas law, citing the federal-funds rationale to support its result:

> While the national policies underlying the NFIP and extensive federal role therein impel our conclusion that federal common law governs claims under flood insurance policies, the same does not apply in actions for tortious misrepresentation against WYO insurers.... [W]hile WYO insurers may draw on FEMA letters of credit to pay SFIP claims, the WYO–FEMA agreement does not permit such draws to cover a WYO company's liability for fraud. The more attenuated federal interests in such claims lead to our conclusion that the limitations period governing them derives from state rather than federal law. Article VIII(Q) of the SFIP concerns only suits "to recover money under this policy." Likewise, 42 U.S.C. § 4072 addresses itself solely to actions arising from partial or complete disallowance of flood insurance policy claims. Neither provision sets a limitations period governing tort actions based on misrepresentations concerning the SFIP, as opposed to contract claims under the SFIP itself. Absent express preemptions of state law fraud actions against WYO insurers or conflict with any federal provision, we conclude that the Spences timely filed their action for misrepresentation under the four-year Texas limitations period.[53]

A federal district court held likewise in *Cohen v. State Farm Fire & Casualty*,[54] concluding that plaintiffs could bring a state law claim for breach of the implied covenant of good faith and fair dealing.[55]

5. *Because misrepresentation and fraud claims are not claims "under the policy," they are not subject to the SFIP forum selection clause.*

■ Allstate argues that the SFIP forum selection clause required Moore to file her suit in federal district court. The standard SFIP forum selection clause reads as follows:

> You may not sue us to recover money under this *policy* unless you have complied with all the requirements of the *policy*. If you do sue ... you must file the suit in the United States District Court for the district in which the insured property was located at the time of the loss.[56]

In *Austin v. Fulton Insurance Co.*,[57] we held that an action for breach of warranty and negligence on the part of an insurer was not an action on the underlying policy:

> A different situation exists as to appellant's claims based upon an alleged breach of warranty to furnish insurance covering loss by earthquake, and upon the alleged negligent failure of appellees to obtain such insurance coverage. Here appellant does not rely upon any provision of the policies, but rather upon what ought to have been included in the policies but was not. Appellant's reliance is placed on matters outside the policies of insurance, and therefore his action against appellees is not one "on this policy", within the meaning of the limitation contained in the policies.... [58]

Moore's claims closely parallel those asserted in *Austin*. Following *Austin*, we conclude that the forum selection clause does not apply to Moore's tort claims.

6. *The federal government therefore does not have original, exclusive jurisdiction over fraud and misrepresentation claims against WYO insurers.*

■ If we eliminate preemption and the forum selection clause as concerns, we are left with the scope of section 4072. Taking *Spence* as our guide and given that the federal government is not obligated to reimburse WYO insurers for their losses in court on fraud claims, we hold that the rationale articulated in *Van Holt* does not apply to Moore's

---

**52.** *See id.* at 794–95.

**53.** *Id.* at 796–97 (footnotes omitted).

**54.** 68 F.Supp.2d 1151 (C.D.Cal.1999).

**55.** *See id.* at 1159–60.

**56.** 44 C.F.R. Pt. 61, App. A(1), art. VIII(R).

**57.** 444 P.2d 536 (Alaska 1968).

**58.** *Id.* at 538.

fraud and misrepresentation claims. The applicability of section 4072 to WYO insurers is limited to claims attempting to interpret or enforce SFIP terms, and section 4072 does not apply to claims in tort against WYO insurers for fraud or misrepresentation. This conclusion is supported by the few cases in which state courts have exercised such jurisdiction.[59]

Accordingly, we reverse the superior court's ruling on this issue. We hold that while federal courts have exclusive jurisdiction over direct claims under the policy, the state has jurisdiction over those of Moore's claims that are based on the relationship between Moore and Heal and what Heal reportedly promised or agreed to obtain.

## C. *Does a Statute of Limitations Bar Moore's Claim?*

Allstate alternatively argues that most of Moore's noncontract claims are barred by Alaska's two-year tort statute of limitations.[60] In response, Moore first argues that Alaska's statute of limitations for suits on economic damages in a fiduciary relationship—six years—applies.[61] Should we find the two-year statute applicable, Moore alternatively argues that the limitations period did not begin to run until she "discovered that she was not being compensated for her loss"—the date she received the Federal Emergency Management Administration award, August 8, 1995. That would put the commencement of her suit well within the two-year statutory period.

■ It is unnecessary to choose between the two statutes potentially at issue here, because the discovery rule makes Moore's claims timely even under the more restrictive two-year statute.

We conclude that the statute began to run when Moore "discovered, or reasonably should have discovered," the torts allegedly committed against her.[62] Under *Gudenau & Co. v. Sweeney Insurance, Inc.,*[63] "[t]he insured is entitled to rely on his broker's professional skill and representations when interpreting the scope of his insurance coverage."[64] This would make August 8, 1995, the date of discovery, assuming Moore were a lay person.

■ But Allstate alleges that Moore is not a lay person, because she "has been a legal secretary in the insurance defense industry for many years, and was able to look up her SFIP in the Federal Register." This assertion is unsupported by citation to evidence establishing that Moore had sufficient expertise that she must be deemed to have discovered the tort at some earlier date. Further, the record contains evidence of substantial differences between flood insurance and other insurance, and we will not charge all legal secretaries with knowledge of the subtleties of the Federal Emergency Management Administration in adjustment of National Flood Insurance Program claims, or of the contents of the Federal Register. There is no evidence Moore understood the significance of the forty-percent rule. We therefore consider her date of discovery to be August 8, 1995.

**59.** See *Phillips v. State Farm Fire & Cas. Co.,* 1993 WL 386291, at *2 (Ohio App.1993) (exercising state jurisdiction over misrepresentation and bad faith claims, with one paragraph discussion of jurisdictional issue); *Kitching v. Zamora,* 695 S.W.2d 553, 554 (Tex.1985) (exercising state jurisdiction over agent's negligence in allowing NFIP policy to lapse, without discussing jurisdictional issue); *Dewitt v. Prudential Ins. Co.,* 717 S.W.2d 414, 416–17 (Tex.App.1986) (exercising state jurisdiction over state Deceptive Trade Practices claim relating to NFIP policy, without discussing jurisdictional issue).

**60.** See AS 09.10.070(a) ("A person may not bring an action ... for ... injury to the rights of another not arising in contract and not specifically provided otherwise ... unless the action is commenced within two years....").

Allstate also implies that the one-year contractual statute of limitations, see 42 U.S.C. § 4072, might apply here. This contention has no merit, because Moore's lawsuit is not an action under the policy.

**61.** See AS 09.10.050; *Breck v. Moore,* 910 P.2d 599, 603 (Alaska 1996) ("The six-year statute of limitations generally applies to professional malpractice actions claiming economic loss.").

**62.** *Gudenau & Co. v. Sweeney Ins., Inc.,* 736 P.2d 763, 767 (Alaska 1987).

**63.** 736 P.2d 763 (Alaska 1987).

**64.** *Id.* at 767.

Because Moore's September 27, 1996, suit was well within both the two-year and the six-year statutes of limitations, her claims are timely.

### D. *Other Issues*

Our reversal in favor of Moore on the merits moots her claim that it was error to award attorney's fees of $18,287.50 to the defendants. Reversal requires that the attorney's fees award be vacated.

Allstate alleges that Moore's appeal should be dismissed because Moore has not posted the cost bond required by Alaska Rule of Appellate Procedure 204(c).[65] According to court personnel, however, Moore did post a cost bond on January 22, 1998. Allstate's argument on this issue appears to be without merit.

### IV. *CONCLUSION*

We REVERSE the summary judgment and REMAND for further proceedings consistent with this opinion. We VACATE Allstate's attorney's fees award.

---

65. Alaska Appellate Rule 204(c) reads in pertinent part: "Unless a party is exempted by law, a bond for costs on appeal shall be filed with the notice of appeal in a civil case. The bond shall be in the sum of seven hundred fifty dollars ($750.00)...."