*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DANIEL BLAIR, | ) | |
| | ) | Supreme Court No. S-16388 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-11530 CI |
| v. | ) | |
| | ) | O P I N I O N |
| FEDERAL INSURANCE COMPANY | ) | |
| and CHARLES FOGLE, | ) | No. 7287 – September 7, 2018 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Gerald W. Markham, Friday Harbor, Washington, for Appellant. Cheryl L. Graves, Farley & Graves, P.C., Anchorage, for Appellees.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.

## I.   INTRODUCTION

A seaman sued his former employer and the former employer's liability insurer, claiming that the insurer had failed to pay him amounts due under the terms of a settlement agreement. The seaman asserted that the "policy limits" settlement included both the policy's stated limits and attorney's fees calculated under Alaska Civil Rule 82. The insurer, relying on the policy's notice that fees were included in the policy limits,

argued that the settlement had been fully satisfied. The parties also disagreed about whether costs from a review of the seaman's medical bills were properly counted against the policy limits. After contentious discovery, the superior court granted summary judgment for the insurer, finding that the policy's Rule 82 notice was valid and that the settlement had been satisfied. The court awarded attorney's fees to the insurer as the prevailing party.

The seaman appeals the grant of summary judgment, the denial of some discovery, and the award of attorney's fees. We affirm the superior court's summary judgment and discovery rulings except with regard to whether the costs of the medical review were properly deducted from the policy limits; we conclude that issues of fact precluded summary judgment on this issue. We reverse summary judgment only as to that issue, vacate the attorney's fees award, and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts

Daniel Blair was injured in August 2008 while working onboard the F/V INVINCIBLE, a vessel owned and operated by Charles Fogle. Fogle held a policy of marine insurance issued by Federal Insurance Company. The policy's liability limit was "$1,000,000 Each Vessel . . . [for] Any One Accident or Occurrence." It also contained a notice, headed, "**THIS POLICY LIMITS COVERAGE FOR ATTORNEY FEES UNDER ALASKA RULE OF CIVIL PROCEDURE 82**," which summarized Alaska Civil Rule 82[1] and explained that "[i]f the limit of liability of the applicable coverage is $1,000,000 or more, we will not pay or indemnify you for any combination of judgment

---

[1]     Alaska Rule of Civil Procedure 82(a) provides that, with some limited exceptions, "the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule."

or claim settlement and attorney fees under Alaska Rule of Civil Procedure [sic] that exceeds the limit of liability of the applicable coverage."

Blair and Federal, through their lawyers, negotiated over the course of several months and then reached a settlement agreement. Neither party discussed Rule 82 fees or the policy's Rule 82 notice during these negotiations. From the outset, however, the parties disagreed about the sum of $2,268.78 paid to Mahl's Medical Review, a company that reviews medical bills in order to help "insurers save money by identifying and eliminating inaccurate, duplicate[,] and unwarranted charges." Blair contended that the sum should not be deducted from the policy limits because Mahl's was engaged to lower costs for Federal's benefit, not Blair's. Our record shows no clear resolution of this issue during the negotiations.

The parties signed their settlement agreement on December 27, 2009. The agreement reads, in part:

> I, DANNY BLAIR, in exchange for the remaining policy limits under the vessel's $1,000,000 P&I [protection and indemnity] policy do hereby release and forever discharge Charles Fogle . . . . The P&I underwriter has calculated the remaining policy limits at $961,447.81 and will pay that amount upon execution of this release. ~~Mr. Blair reserves the right to claim additional amounts which he contends may be part of the policy limits, including any unpaid deductible.~~[²] The vessel owner and vessel's insurers do not agree that additional sums are due but if these sums are determined to be due as properly part of the P&I limits under this policy they will be paid.

Federal paid the specified sum of $961,447.81 to Blair.

---

² In the original, the sentence reprinted here in strikethrough was crossed out by hand and initialed by Blair.

**B. Proceedings**

Nearly three years later — on December 11, 2012 — Blair filed suit against Federal. He alleged that Federal had breached the settlement agreement by paying "substantially less" than the remaining policy limits, though his complaint did not identify what had not been paid. In May 2013 he filed a motion for partial summary judgment that clarified his claim. He argued that "[i]n arriving at its 'remaining policy limits' calculation Federal failed to address its obligation for [Rule] 82 attorney fees." Although acknowledging the existence of the Rule 82 notice in the policy, Blair contended that the notice did not comply with governing regulations of the Alaska Division of Insurance and was therefore void. Thus, Blair argued, the policy limits were the $1 million face value of the policy, less amounts already paid, plus Rule 82 attorney's fees. Blair also argued that Federal had improperly deducted the Mahl's bill from the policy limits.

Federal cross-moved for summary judgment, arguing that the policy's Rule 82 notice was valid and that the settlement was for the sum certain of $961,447.81, which it had promptly paid. Blair then moved under Alaska Civil Rule 56(f) for a continuance to conduct additional discovery, and the continuance was granted.

A period of contentious discovery followed, in which the superior court conducted in camera review of some documents Federal claimed were privileged, ordered production of some requested documents but not others, and denied a motion to compel brought by Blair. The court then granted summary judgment in favor of Federal. It found that Federal's Rule 82 notice was lawful because it conformed with the standards imposed by the Division of Insurance. It also "construe[d] the Release to mean that parties completely settled the claim against the P&I policy by having Federal pay Blair $961,447.81." The court awarded Federal, as the prevailing party, Rule 82 attorney's fees and costs.

Blair appeals the superior court's orders granting Federal's cross-motion for summary judgment, denying his discovery motion, and awarding Rule 82 attorney's fees to Federal.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo.[3] "We will affirm a grant of summary judgment if there are no genuine issues of material fact and if the movant is entitled to judgment as a matter of law."[4] We draw all reasonable inferences in favor of the nonmoving party.[5]

We review a superior court's discovery rulings, including decisions about "discovery sanctions, such as spoliation remedies, for abuse of discretion."[6] We will find an abuse of discretion upon a showing that a decision was "arbitrary, capricious, manifestly unreasonable, or stemmed from improper motive."[7]

Whether the superior court applied the appropriate legal standard in awarding attorney's fees is a question of law that we review de novo.[8]

---

[3]     *Alakayak v. B.C. Packers, Ltd.*, 48 P.3d 432, 447 (Alaska 2002) (citing *Moore v. Allstate Ins. Co.*, 995 P.2d 231, 233 (Alaska 2000)).

[4]     *Id.* (citing *Moore*, 995 P.2d at 233).

[5]     *Id.* (citing *Moore*, 995 P.2d at 233).

[6]     *Todeschi v. Sumitomo Metal Mining Pogo, LLC*, 394 P.3d 562, 570 (Alaska 2017) (citing *Mills v. Hankla*, 297 P.3d 158, 164-65 (Alaska 2013)); *Madonna v. Tamarack Air, Ltd.*, 298 P.3d 875, 878 (Alaska 2013).

[7]     *Lindbo v. Colaska, Inc.*, 414 P.3d 646, 651 (Alaska 2018).

[8]     *State v. Jacob*, 214 P.3d 353, 358 (Alaska 2009).

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Entering Summary Judgment Against Blair On The Issue Whether Federal Owed Rule 82 Attorney's Fees Under The Settlement.

We first address whether Federal's Rule 82 notice is valid and enforceable. Concluding that it is, we consider whether there is any other basis on which Blair could believe that the parties' settlement agreement entitled him to attorney's fees beyond the policy limits; we conclude there is not and that the superior court properly granted summary judgment on this issue.

#### 1. Federal's Rule 82 notice conformed to the notices written by the Division of Insurance.

A regulation promulgated by the Division of Insurance provides two options for an insurer wanting to limit its exposure for Rule 82 attorney's fees to its stated policy limits.[9] First, an insurer may use a notice that "conform[s]" with one of four model forms written by the Division (referred to as Notices A, B, C, and D).[10] Alternatively, the insurer may use a notice of its own devising, provided it obtains written approval from the Division's director "upon a determination that the proposed notice is substantially equivalent to" any one of the Division's four models.[11]

In *Therchik v. Grant Aviation, Inc.* we decided that for a notice to be found to be "conform[ing]," it must follow the Division's model forms far more closely than a notice the director approves as "substantially equivalent."[12] A conforming notice must be "very close to identical" to a model form, though it need not be "word-for-word

---

[9] 3 Alaska Administrative Code (AAC) 26.550 (2016).

[10] 3 AAC 26.550(b)(1).

[11] 3 AAC 26.550(b)(2).

[12] 74 P.3d 191, 196-97 (Alaska 2003).

identical."[13]  It may contain "minute deviations, such as immaterial punctuation errors, that would not diminish the quality of notice or the substantive message."[14]  An insurer's notice that differs from the model forms in "substance, tone, clarity, [or] directness" would not "conform."[15]

Federal does not dispute that it did not obtain the director's approval of its Rule 82 notice "upon a determination that [it was] substantially equivalent" to one of the Division's model forms.  The parties' disagreement focuses instead on whether Federal's notice *conformed with* any of the four models.  Blair initially asserted that Federal's notice "grossly fails to strictly comply" because it did not identify which of the model forms it was intended to follow and it failed to include the Division's heading.  The Division's notices have the following five lines at the top of the first page:

**ALASKA DEPARTMENT OF COMMERCE AND ECONOMIC DEVELOPMENT**
**DIVISION OF INSURANCE**
**ATTORNEY FEES COVERAGE NOTICE [A, B, C, OR D]**

**THIS POLICY LIMITS COVERAGE FOR ATTORNEY'S FEES**
**UNDER ALASKA RULE OF CIVIL PROCEDURE 82**

Blair argued that the first three lines of this heading were necessary so the insured would know that Federal's Rule 82 notice was "an Alaskan official notice."[16]  Federal responded that its notice was a valid combination of relevant information from the Division's Notices B and C with some minor differences in font.

The superior court rejected Blair's argument that the notice had to include the entirety of the Division's heading.  The court characterized the first three lines as

---

[13]     *Id.* at 196.

[14]     *Id.* at 196-97.

[15]     *Id.* at 198.

[16]     Emphasis omitted.

"simply identif[ying] the notices as being promulgated by the Division and distinguish[ing] between the four Division notices." Blair maintains his argument on appeal, contending that "the Director wanted it clear this was an *Alaskan official notice* from the agency *charged with the insured's protection*, not merely some insurance company incomprehensible 'boiler plate.' "[17] He argues that using the Division's entire heading verbatim would give the notice greater weight and make it more likely to be read.

We agree that the headings in an insurance policy should be designed to attract the insured's attention to the policy's important provisions, but we conclude that Federal accomplished this with its heading, the first two lines of which are reproduced directly from the Division's model forms:

**THIS POLICY LIMITS COVERAGE FOR ATTORNEY'S FEES
UNDER ALASKA RULE OF CIVIL PROCEDURE 82
COMBINED FORM**

Adding the Division's name and the letter designations of its model forms would dilute the directness of the notice's heading. It could also be misleading: Federal's notice was *not* an "Alaskan official notice" but a conforming one created by Federal.

Although the nonconformance argument Blair made in his motion for summary judgment addressed only the notice's heading, the superior court carefully scrutinized the body of Federal's notice and noted several other differences between it and the Division's model forms. Federal's notice, except for the heading, is all in the same typeface. In the Division's Notices, however, the third and fourth paragraphs (explaining the limitations on coverage) are in bold and the fifth paragraph (advising insureds that they may be exposed to attorney's fees liability) is in bold italics. As the superior court noted, these different fonts were presumably used for emphasis. But the

---

[17] Emphases in original.

court also found that "the extent of the boldface in the Division's Notices undercut its effectiveness"; that the use of boldface for only the most important words would have been more likely to make a difference to a reader; and that overall "the differences in typeface have no significance in substance or clarity." Blair does not challenge these conclusions in his opening brief, so we need not decide whether we agree.

The superior court also noted that Federal's "Combined Notice" combined introductory language from the Division's Notice B — addressing suits "in which we have a right or duty to defend an insured within the limits of liability" — and Notice C — addressing suits "in which we have neither a right nor a duty to provide a defense but we have agreed to indemnify an insured for the costs of defense within the limits of liability." Federal's notice combined these phrases to read, "In any suit in Alaska in which we have a right or duty to defend an insured or in which we have neither a right nor a duty to provide a defense." It left out the concluding phrase from Notice C: "but we have agreed to indemnify an insured for the costs of defense." The superior court overlooked this omission when it found that the combined language did "not change the substance of the notice" and conformed to the Division's model notices.

Blair argues that the omitted phrase was "essential to understanding the [Rule] 82 limitation in the context of a P&I policy." He asserts, however, that "[p]utting this [argument] in his brief would make it seriously over-length," and he refers us to his summary judgment pleadings.[18] Though given more attention in Blair's reply than his opening brief, the argument is inadequately briefed, and we decline to consider it.[19] We

---

[18]     We note that Blair's opening brief is already overlength, and that its 32 pages of facts and proceedings fail to focus on what was relevant to the issues actually briefed.

[19]     *Kay v. Danbar, Inc.*, 132 P.3d 262, 265 n.1 (Alaska 2006) ("Because Kay's
(continued...)

therefore affirm the superior court's decision on summary judgment that Federal's Rule 82 notice was valid.

> **2. The valid Rule 82 notice resolves the objective meaning of the settlement as to attorney's fees.**

We turn to the interpretation of the settlement agreement in light of our conclusion that Federal's Rule 82 notice is valid. "When interpreting a contract, the goal 'is to give effect to the reasonable expectations of the parties.' "[20] In order to ascertain the parties' reasonable expectations, we look to the written agreement and "extrinsic evidence regarding the parties' intent at the time the contract was made."[21] "The intent of the parties when entering a contract is a question of fact and . . . summary judgment is improper when the evidence before the superior court establishes a factual dispute as to the intent of the contracting parties."[22]

In this case there is no dispute that the insurance policy informed Blair that Federal would not be liable for Rule 82 attorney's fees in excess of the policy limits. We have determined that Federal's Rule 82 notice is valid. Blair does not contend that his claim relies on some ambiguity in the notice's language. The parties' settlement

---

[19] (...continued) brief merely incorporates his superior court arguments on the summary judgment issues, we deem these issues to be inadequately briefed, and we decline to consider them."); *Anchorage Nissan, Inc. v. State*, 941 P.2d 1229, 1240 (Alaska 1997) ("We need not consider arguments which a party on appeal merely adopts and incorporates by reference to its lower court memoranda.").

[20] *Nautilus Marine Enters., Inc. v. Exxon Mobil Corp.*, 305 P.3d 309, 315 (Alaska 2013) (quoting *Villars v. Villars*, 277 P.3d 763, 768 (Alaska 2012)).

[21] *Fairbanks N. Star Borough v. Tundra Tours, Inc.*, 719 P.2d 1020, 1024 (Alaska 1986).

[22] *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 712 (Alaska 2003).

agreement mentions attorney's fees only when listing them among the claims that Blair expressly agreed to "release and forever discharge" "in exchange for the remaining policy limits," which the agreement represents to be $961,447.81. Nor does Blair cite any extrinsic evidence in support of his claim; he does not allege that the parties ever discussed attorney's fees during their negotiations. Even viewing the facts in the light most favorable to Blair, there is simply no evidence that he reasonably expected anything in settlement other than the policy limits as the policy defined them.

At oral argument Blair's counsel acknowledged that "we should have been more forthcoming" during negotiations by bringing up the attorney's fees issue. He suggested, however, that it might be appropriate for parties to leave some terms unresolved during negotiations and "see what happens with the law," based on the possibility that successful litigation in a different case will support a claim to more money before the statute of limitations runs. But assuming that was Blair's strategy here, he so closely guarded his claim to Rule 82 fees that there is no evidence it ever existed. "The mutual assent requirement 'cannot be defeated by the unexpressed subjective intent of one of the parties; rather[] it must rest on an objective manifestation of mutual intent regarding the essential terms of the contract.' "[23] Blair objectively manifested his intent to settle the case for policy limits, and, with the exception noted in the section that follows, the superior court did not err when it found that the parties completely settled Blair's claim, including any claim to attorney's fees.

### B.     It Was Error To Enter Summary Judgment For Federal On The Issue Of The Bills From Mahl's Medical Review.

Blair asserts that the superior court erred when it entered final judgment without ruling on his claim that Federal improperly deducted the Mahl's payment from

---

[23]     *Colton v. Colton*, 244 P.3d 1121, 1128 (Alaska 2010) (quoting *Howarth v. First Nat'l Bank of Anchorage*, 596 P.2d 1164, 1167 n.8 (Alaska 1979)).

the policy limits. Blair squarely raised this claim in his motion for summary judgment, but the superior court's decision addressed only the Rule 82 issue, finding in Federal's favor. Federal contends that the court did not overlook the Mahl's payment issue but rather implicitly rejected Blair's argument when it ruled that his claim was completely settled by Federal's payment of $961,447.81 under the settlement agreement. But whether the court failed to rule on the issue or implicitly ruled against Blair, we conclude it was error because fact issues should have precluded summary judgment.

In the settlement agreement, the sentence reserving Blair's "right to claim additional amounts which he contends may be part of the policy limits" is stricken and initialed by Blair, but the next sentence remains: "The vessel owner and vessel's insurers do not agree that additional sums are due but if these sums are determined to be due as properly part of the P&I limits under this policy they will be paid." Federal's attorney appears to have conceded at his deposition that the settlement agreement's phrase "additional sums" referred to the Mahl's payment.[24] The other extrinsic evidence reinforces this conclusion: Blair contested the Mahl's payment from the time of his first letter discussing settlement. The record also contains emails showing that the parties had still failed to reach agreement on the Mahl's payment a week before the settlement agreement was signed. And the underlying policy is reasonably susceptible to two interpretations: either the Mahl's payment was a legitimate expense of the insured charged against the policy limits or, as Blair argued, the services were analogous to those provided by an adjuster and should be carried by the insurer.

---

[24] The attorney also testified, however, that this line was meant to be stricken because the Mahl's payment issue had been resolved. But because Federal prevailed on summary judgment, we view the evidence in the light most favorable to Blair. *Alakayak v. B.C. Packers, Ltd.*, 48 P.3d 432, 447 (Alaska 2002) (citing *Moore v. Allstate Ins. Co.*, 995 P.2d 231, 233 (Alaska 2000)).

We conclude there was a genuine issue of material fact as to whether the issue of the Mahl's payment was resolved or was left open for later determination. We therefore reverse the grant of summary judgment on this narrow issue.

### C. Blair Demonstrates No Abuse Of Discretion In The Superior Court's Denial Of His Discovery Motions.

Blair also asserts that the superior court abused its discretion by improperly denying discovery. His briefing of the issue is cursory and confusing. He refers to an attorney's bills and files from the Coastal Marine Fund, which he alleges has acted as Federal's agent.[25] He provides no citations to the record, cites no legal authority, and does not explain how the court's rulings prejudiced him.[26] Federal's discussion of the discovery issues helps our understanding of them, but it would be anomalous for us to allow the appellee's helpfulness to resurrect arguments the appellant has waived by his inadequate briefing.[27] In short, Blair gives us no basis for determining that the superior court abused its discretion in any of its discovery rulings.

---

[25] Blair's discovery argument also mentions "Bauer/Moynihan documents," not further explained, but he describes them as "belatedly produced," so we assume his claim of error does not extend to them.

[26] Blair cites to earlier pages of his brief for "[a] description of his denial of discovery into Fogle's agents['] documents of events surrounding the execution of Blair's release," but we do not find those earlier pages any more helpful in constructing Blair's arguments.

[27] *See Windel v. Carnahan*, 379 P.3d 971, 980 (Alaska 2016) ("[W]aiver due to inadequate briefing 'is not correctable by arguing the issue in a reply brief.' " (quoting *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991))). In *Juelfs v. Gough*, 41 P.3d 593, 596 (Alaska 2002), we declined to find an issue "waived on the basis of cursory briefing" in part because the appellee "accurately perceive[d] [the appellant's] argument and respond[ed] to it." But the appellant in that case was unrepresented, and even so she made her argument "implicitly and in a manner that we can easily review," *id.*, which is not the case here.

**D.** **The Superior Court Did Not Err By Deciding That Maritime Law Did Not Preclude An Award Of Rule 82 Attorney's Fees.**

Our conclusion that one substantive claim remains to be resolved on remand — regarding the payment to Mahl's Medical Review — requires the superior court to also reconsider its prevailing party determination and attorney's fees award. For the sake of efficiency we address Blair's argument that Federal cannot recover Rule 82 fees because Blair's claim arose in admiralty.

We rejected the same argument more than 30 years ago in *Williams v. Eckert*, in which we held that a plaintiff who sued in state court to recover a vessel was entitled to Rule 82 attorney's fees when he prevailed.[28] We noted that "Congress has not prohibited such an award in state actions arising out of the admiralty jurisdiction of the United States" and that "an award of attorney's fees in a state court does not frustrate or displace the essential features of substantive maritime law" because "[i]t is merely remedial in nature."[29] We extensively revisited *Williams* in *Hughes v. Foster Wheeler Co.*, in which we concluded once again that Rule 82 was not inconsistent with federal law and could be applied to mariners' claims brought in state court.[30]

Blair does not engage significantly with our discussion in *Williams* and *Hughes*, much less carry his "heavy threshold burden of showing compelling reasons" for overturning these precedents.[31] His central argument is that attorney's fees awards may chill future claims brought by other mariners and that courts must be particularly

---

[28]     643 P.2d 991, 997 (Alaska 1982).

[29]     *Id.*

[30]     932 P.2d 784, 786-91 (Alaska 1997).

[31]     *McCrary v. Ivanof Bay Vill.*, 265 P.3d 337, 340-41 (Alaska 2011) (quoting *Guerrero ex. rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 982 n.104 (Alaska 2005)).

solicitous of sailors as "the wards of admiralty."[32]  But many would-be civil plaintiffs face the same potential "chilling" effect.  Accordingly, the factors listed in Rule 82(b)(3) allow the court to vary an award based on considerations including "the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts"[33] and "other equitable factors deemed relevant."[34]  Because federal law does not displace Rule 82 when mariners bring their suits in state court, and because Rule 82 accommodates the concern Blair presses on appeal, we see no reason to again reconsider *Williams* and *Hughes*.  The superior court did not err in deciding that Rule 82 applied to this case.

## V.    CONCLUSION

We AFFIRM the superior court's summary judgment and discovery rulings except with respect to the claim regarding Mahl's Medical Review.  We REVERSE the entry of summary judgment on this issue, VACATE the attorney's fees award, and REMAND for further proceedings consistent with this opinion.

---

[32]    *See Brown v. State*, 816 P.2d 1368, 1371 (Alaska 1991).

[33]    Alaska R. Civ. P. 82(b)(3)(I).

[34]    Alaska R. Civ. P. 82(b)(3)(K).