Sanford J. BERGER, et al.,
Plaintiffs–Appellants,

v.

Samuel R. PIERCE, et al.,
Defendants–Appellees.

No. 90–3274.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1990.

Decided May 20, 1991.

**394**

Sanford J. Berger, Robert M. Fertel (argued), Berger & Fertel, Cleveland, Ohio, for plaintiffs–appellants.

Michael Anne Johnson, Emily M. Sweeney, Asst. U.S. Attys., Office of the U.S. Atty., George J. Moscarino, Jones, Day, Reavis & Pogue, Marvin L. Karp, Ulmer & Berne, Cleveland, Ohio, Charles H. Moellenberg, Jr. (argued), Brian C. Castello, Jones, Day, Reavis & Pogue, Pittsburgh, Pa., for defendants–appellees.

Before RYAN and NORRIS, Circuit Judges, and JOINER, Senior District Judge.*

JOINER, Senior District Judge.

Each of the plaintiffs were owners of property along the shore of Lake Erie. Each plaintiff was issued a standard flood insurance policy by the Federal Insurance Administration (FIA) in accordance with the National Flood Insurance Program (NFIP). The policies were renewed annually and were in effect in 1987. Plaintiffs allege that their properties were damaged during that year from causes covered by their flood insurance policies. Plaintiffs filed loss claims during this period of renewal. The claims were submitted to Computer Sciences Corporation (CSC), the fiscal agent of the NFIP, for processing. CSC requested GAB Business Services (GAB), an approved NFIP adjustor, to investigate the claims. GAB's report identified "gradual erosion" as the central cause of plaintiffs' losses. This report was processed through CSC, and the FIA denied plain-

tiffs' claims because their losses were caused by "gradual erosion."

The complaint, filed on May 6, 1988, alleges seven causes of action. Count I seeks a declaratory judgment that provisions in the insurance contract under which plaintiffs' claims were denied are contrary to law and to the congressional intent and therefore not a valid basis for denying the claims. Count II was a claim against the Secretary of Housing & Urban Development (HUD) and is not appealed here. Count III asserts that the FIA was estopped to deny plaintiffs' claims because of the issuance of policies on properties lying within a geographic zone covered by the NFIP. Count IV asserts a RICO claim against the defendants. Count V states a *Bivens* claim against the FIA for disparate treatment of four plaintiffs as compared with other similarly situated policy holders. Counts VI and VII assert state law claims; Count VI, breach of an implied covenant of good faith; and Count VII, a fraud claim.

The defendant FIA filed a motion to dismiss all counts. On February 23, 1990, the district court granted the motion with prejudice as to counts I–V and without prejudice as to counts VI and VII. Defendants CSC and GAB filed motions for summary judgment, which the district court granted contemporaneously with its ruling on the motion to dismiss.

For the reasons stated below, the order of dismissal and summary judgments as to Counts III–VII are affirmed. The order of dismissal as to Count I is reversed and the case remanded to the trial court. In addition, Count IV is remanded with specific directions.

## I.

The NFIP was established in 1968 by the National Flood Insurance Act, 42 U.S.C. §§ 4001–4127 (the Act). The NFIP is a federally-subsidized program which provides flood insurance at below actuarial rates. Congress created the program because of the unavailability of flood insur-

---

\* Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

ance from private insurance companies, who were unable to write flood insurance policies on an economically-feasible basis. Initially, the Act covered any "flood" event, defined as "hav[ing] such meaning as may be prescribed in regulations of the Director, and may include inundation from rising waters or from overflow of streams, rivers, or other bodies of water, or from tidal surges, abnormally high tidal water, tidal waves, tsunamis, hurricanes or other severe storms or deluge[.]"

In 1973, responding to a wide-spread demand, Congress broadened the scope of the Act by adding to the definition of "flood" the following: "[T]he collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels...." 42 U.S.C. § 4121(c).

The operational methods of the NFIP have changed over time. When the Act was drafted, Congress set up two different methods for operating the program: Plan A, for private-industry involvement, and Plan B, for administrative supervision of the program. From 1968 to 1977, NFIP operated under the statutory Plan A, which permitted the private insurance industry to implement and operate the flood insurance program with limited federal involvement. At the end of that time the Secretary of HUD discontinued Plan A and implemented statutory Plan B. Plan B placed primary responsibility for operating the flood insurance program with the federal government. Under Plan B, the Federal Emergency Management Administration (FEMA) has managerial responsibility for the operation of the NFIP, among other federal programs, and complete control of the payment or disallowance of all flood insurance claims. FEMA has promulgated a standard flood insurance policy, the primary policy that is involved in this case. 44 C.F.R. § 61, App.A. The FIA is a component organization of FEMA charged with administering the NFIP. The FIA is headed by the Federal Insurance Administrator.

The Administrator, in carrying out his mandate under the Act, defined "flood" in the policy of insurance as:

(a) A general and temporary condition of partial or complete inundation of normally dry land areas from:

(1) The overflow of inland or tidal waters ...

(b) The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels ... which results in flooding as defined in (a)(1) of this definition."

44 C.F.R. § 61, App.A (1990). This definition closely parallels the statutory language.

The policy, however, goes on to state certain exclusions. Article III, "Losses not Covered," states, "We only provide coverage for direct physical loss by or from flood which means we do not cover: (A) Losses from other casualties, including: (1) Loss caused by ... gradual erosion, or any other earth movement except such ... erosion as is covered under the peril of flood." *See* 44 C.F.R. § 61, App.A.

To assist in the issuance and processing of flood insurance applications and claims, Congress authorized the appointment of a "fiscal agent" to service the NFIP. 42 U.S.C. § 4071. FEMA's regulations likewise authorize the designation of a "servicing agent" to "assist in issuing flood insurance policies ... and to accept responsibility for delivery of policies and payment of claims for losses as prescribed by and at the discretion of the administrator." 44 C.F.R. § 62.3(a) (1990).

On October 1, 1983, FEMA designated CSC as the fiscal agent for the NFIP. As the fiscal agent, CSC does not underwrite flood insurance policies nor does it have a contractual relationship with the insureds. It merely acts in a ministerial manner as a conduit between FEMA/FIA and the insureds for flood insurance policy applications, claims handling and statistical reporting. FEMA retains ultimate authority over the issuance of policies and the approval or denial of claims. GAB was retained by

CSC to investigate claims filed in accordance with 44 C.F.R. section 62.21 and investigated the claims involved in this case. Final decisions regarding claims are not made by GAB, which is an investigating and reporting agency.

To resolve the disputes over disallowed claims under Plan B, Congress established right of action allowing policy-holders to challenge the disposition of their claims in federal court. Section 4072 provides in relevant part:

> [U]pon the disallowance by the Director [of FEMA] of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072. The regulations alternatively permit an action challenging a claimed disallowance to be brought against the FIA, which has decision-making responsibility for the NFIP.

### II.

Although the complaint is not as articulate as might be desired, the bottom line of the claims made relates to the question of the policy language's meaning and whether or not that language complies with the mandate of Congress. Before discussing this underlying question, there are preliminary questions that need to be addressed.

### A.

■ CSC and GAB are statutory fiscal agents of the government and at all times were acting pursuant to the instruction and direction of the program's administrators. The statute provides that actions should be brought against the Director. 42 U.S.C. § 4072. The statute does not waive governmental sovereign immunity as to any other persons.

We agree with the reasoning of *Central Claims Service v. Computer Science Corp.*, 706 F.Supp. 463 (E.D.La.1989), cited by the district court. In *Central Claims*, the district judge drew an analogy to cases analyzing the immunity of fiscal agents under the Medicare Act, which hold that such agents are immune from suit for activities within the scope of the authority delegated to them. CSC alternatively denominates this argument as one that the federal government is the real party in interest, citing *Bushman v. Seiler*, 755 F.2d 653, 655–56 (8th Cir.1985), and other cases involving analyses similar to that of the court in *Central Claims*. The statutory and regulatory authorization to bring suit for disallowance of claims under NFIP contracts gives the right to sue the Director of FEMA or the FIA Administrator only, not the FIA's fiscal agents. In sum, this dispute is properly regarded as one between the insureds and FEMA or FIA. *South Carolina v. Baker*, 485 U.S. 505, 523, 108 S.Ct. 1355, 1366, 99 L.Ed.2d 592 (1988), and *United States v. New Mexico*, 455 U.S. 720, 735 n. 11, 102 S.Ct. 1373, 1383 n. 11, 71 L.Ed.2d 580 (1982), involving the immunity of federal fiscal agents from state taxes, are not relevant to a determination of fiscal agents' immunity to suits arising out of the conduct of their duties on behalf of the federal government. CSC and GAB are not proper defendants, and we affirm the summary judgments in their favor.

■ Count III asserted that the FIA was estopped to deny plaintiffs' claims on the grounds that plaintiffs' properties lie in a geographical zone covered by the NFIP, that plaintiffs relied on FIA's assertions that they were insured and that their insurance contracts were "secretly modified". There is nothing in the case to suggest that the agency did anything secretly or anything except issue the policy, administer the law, and deny the claims. Whether this was or was not done correctly does not

create an estoppel. The district court was correct in dismissing Count III.

■ Count IV attempts to allege a RICO claim against the federal government, CSC, and GAB. Aside from the fact that the elements of RICO have not been adequately alleged, 18 U.S.C. §§ 1961–2, it is clear that there can be no RICO claim against the federal government. *Cf. Wiley v. Federal Land Bank*, 657 F.Supp. 964 (S.D.Ind. 1987). Section 1962 states a requirement of "racketeering activity" as a predicate for a civil RICO action. Section 1961(1), in turn, defines "racketeering activity," which requires that the defendant be, variously, "chargeable," "indictable," or "punishable" for violations of specific state and federal criminal provisions. The assertion in Count IV that the FIA was engaged in a RICO conspiracy under section 1962(d) was patently defective as a matter of law, since it is self-evident that a federal agency is not subject to state or federal criminal prosecution. The court believes that the effort to encumber the action with this threatening claim may be an abuse of legal practice. The district court is directed on remand to hold a hearing as to whether Rule 11 sanctions should be applied. Fed. R.Civ.P. 11; *Cooter & Gell v. Hartmarx Corp.,* — U.S. —, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985).

■ The district court correctly held as to Count V that a *Bivens* claim may not be asserted against a federal officer in his official capacity, and, in addition, we think that the FIA administrator has an unqualified immunity to claims of this nature. *Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir.1983), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984); *Sanchez–Mariani v. Ellingwood*, 691 F.2d 592 (1st Cir.1982); *see also Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *Butz v. Economou,* 438 U.S. 478, 512–14, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978).

■ The state law claims set forth in Counts VI and VII are deficient for a number of reasons. As to Count VI, we are in accord with the holdings of several other courts of appeals that federal common and statutory law preempts state principles of contracts law for purposes of the interpretation of NFIP policies, as is expressly stated in the policy. *Sodowski v. National Flood Ins. Program*, 834 F.2d 653, 655 (7th Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988); *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 135 (1st Cir.1984); *West v. Harris*, 573 F.2d 873 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). The district court properly noted as to Count VII that the Federal Tort Claims Act does not waive the sovereign immunity of the United States with respect to claims predicated upon misrepresentations. 28 U.S.C. § 2680(h).

■ Plaintiffs also allege as error the district court's refusal to permit discovery. Each of the rulings of the district court which we have upheld was ruled upon as a matter of law and could not have been altered by discovery. There was no material error. As to Count I, which is to be remanded to district court, the district court may now open discovery on the issues to be resolved.

## B.

This case is based on an insurance contract issued pursuant to directions of Congress, and regulated and adopted pursuant to congressional action. The meaning and effect of the insurance contract depends on the meaning and effect of the regulations, and the statute authorizing and directing the regulations and defining the coverage. We have an obligation to harmonize the regulations and statute if possible but, if not, our obligation is to uphold the statute.

■ The court's dismissal of Count I was error for the reason that it was not proper to hold categorically that "gradual erosion" is not covered under the NFIA and the policies issued thereunder. The statute is broad. Although it defines "flood" to have such meaning "as may be prescribed in the regulations," it continues the definition with an imperative, "the term 'flood' *shall*

also include the collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels...." 42 U.S.C. § 4121(c) (emphasis added). Plaintiffs alleged that Lake Erie was exceeding anticipated cyclical levels at the time their properties were damaged.

Congress did not create an exception for gradual erosion. Congress directed that policy coverage turn on "waves" or "currents" that "exceed[ ] anticipated cyclical levels." Until there is an examination of the facts with attention to whether the "erosion or undermining" was caused by "waves or currents of water exceeding anticipated cyclical levels," there can be no determination as to whether or not the property was damaged in a manner compensable under the statute or the contract.

The broad statement of policy leading up to the Act's amendment in 1973 points to the same conclusion:

(g) Erosion and undermining of shorelines by waves or currents. The Congress also finds that (1) the damage and loss which may result from the erosion and undermining of shorelines by waves or currents in lakes and other bodies of water exceeding anticipated cyclical levels is related in cause and similar in effect to that which results directly from storms, deluges, overflowing waters, and other forms of flooding, and (2) the problems involved in providing protection against this damage and loss, and the possibilities for making such protection available through a Federal or federally sponsored program, are similar to those which exist in connection with efforts to provide protection against damage and loss caused by such other forms of flooding. It is therefore the further purpose of this title to make available, by means of the methods, procedures, and instrumentalities which are otherwise established or available under this title for purposes of the flood insurance program, protection against damage and loss resulting from the erosion and undermining of shorelines by waves or currents in lakes and other bodies of water exceeding anticipated cyclical levels.

42 U.S.C. § 4001(g). We do not hold at this time that there is liability. We only hold that the district court was in error when it held that the gradual erosion exclusion, under the facts as alleged in this case, would justify dismissal of this action for failure to state a claim.

The difficulties in this case start with FIA's decision denying the plaintiffs' claims on the ground of "gradual erosion." If it is true that the damages resulted from gradual erosion, the next step in the analysis under the policy, regulations and statutes requires an examination of whether the exclusion of "gradual erosion" under the policy's Article III, "Losses not Covered," is applicable. That provision, purporting to exclude from coverage losses resulting from "gradual erosion" itself contains an exception. This exception states "except such ... erosion as is covered under the peril of flood." This leads back to the policy's definition of flood, which includes "erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels...." Thus, the statutory and policy coverage first turns on "waves or currents of water exceeding anticipated cyclical levels" and the exclusion written in the policy turns on the same facts. There is much more for the decision-maker to do before denying these claims.

While the FIA correctly asserts that its regulations are entitled to great deference because they were enacted contemporaneously with the statutory amendment, *National Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979), "an agency's interpretation of a regulation is valid, however, only if that interpretation complies with the actual language of the regulation." *Fluor Constructors, Inc. v. Occupational Safety & Health Review Comm'n*, 861 F.2d 936, 939 (6th Cir.1988); *see generally Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984). If, as plaintiffs allege, the FIA interpreted the "gradual erosion" exclusion in these cases so as to

read out erosion damage caused by water exceeding anticipated cyclical levels, then the FIA exceeded its authority under the statute.

The FIA's arguments to this court are primarily addressed to the consistency of the regulations' "flood" definition with the statute's, in an attempt to defend the conclusions of the district court, but these arguments blur the distinction between the facial amenability of the regulations to the statute, and the amenability of the administrative interpretation as to plaintiffs, with the agency's regulations. The FIA argues, "[t]he regulations are not in conflict with the statutes but, rather, are consistent with the statutory definitions pertinent to what constitutes gradual erosion." "Gradual erosion," however, is not a term which appears in the statute at all. The FIA further argued in the district court:

> Clearly, Congress intended that erosion only be covered when it was caused by a sudden and unexpected force of nature as opposed to the normal action of tides. The words "exceeding anticipated cyclical levels" are indicative of an intent to limit recovery under the NFIP to losses caused by abnormal erosion.

The district court observed, "[i]t is clear from the [regulations'] definition that flood related erosion is a covered loss. Gradual erosion, however, is not." While the FIA's argument, and the district court's analysis of it, are not entirely clear, they appear merely to beg the question. What Congress intended to cover was (1) damage caused by shoreline erosion, (2) resulting from cyclical water levels exceeding those anticipated. It is apparent to us that there cannot be any temporal limitation on the requisite erosion, of the type advocated by the FIA. Moreover, "erosion" implies a gradual process. We agree with the FIA that Congress intended to draw a distinction between usual and unusual events. However, that distinction is entirely satisfied when it is determined whether or not the erosion which caused the insured's loss was caused by water "exceeding anticipated cyclical levels." Nothing more sudden or unusual is necessary. Indeed, the FIA cites former FIA guidelines which demonstrated an acknowledgment of this:

> [T]he concept of flood now includes a type of erosion: an erosion caused by high levels of water in a lake or other body of water. The fact situation for coverage to apply does not require surface flooding, nor severe storm conditions. The touchstone for coverage is a finding of waves or currents of water exceeding anticipated cyclical levels.

41 Fed.Reg. 36,632 (1976).

The FIA also argued in the district court that the FIA's interpretation of a "gradual erosion" exclusion to incorporate a requirement of suddenness was based upon the legislative history of the 1973 amendment to the "flood" definition. Plaintiffs properly point out, however, that recourse to the legislative history is not warranted where Congress has spoken unambiguously in the statute. *United States v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). In sum, we disagree with the district court that plaintiffs failed to state a claim. It is apparent that the FIA's application of its regulations to plaintiffs was in error, if plaintiffs can substantiate their claim that their losses resulted from erosion by water exceeding the anticipated cyclical levels, as those are administratively defined. The administrative "gradual erosion" exception, whatever its applicability in other circumstances, cannot contravene Congress' express intent to compensate claimants under the circumstances alleged by plaintiffs.

As to Counts III through VII, the district court is AFFIRMED as outlined herein and based upon the memorandum and opinion of the district court, filed February 23, 1990. As to Count IV, the district court is directed to hold a hearing to determine whether Rule 11 sanctions should be applied against the plaintiffs, their attorneys, or both, for the filing and prosecution of this count.

As to the dismissal of Count I, we REVERSE and REMAND for proceedings in accordance with this opinion.