[No. A088300. First Dist., Div. Two. Jan. 22, 2001.]

THOMAS McCORMICK et al., Plaintiffs and Appellants, v. TRAVELERS INSURANCE COMPANY et al., Defendants and Respondents.

---

**COUNSEL**

Gumbiner & Eskridge, Joel P. Gumbiner and Jack D. Eskridge for Plaintiffs and Appellants.

Farbstein & Blackman, Gary R. Gleason; Nielsen Law Firm and Gerald J. Nielsen for Defendants and Respondents.

---

**OPINION**

**RUVOLO, J.—**

### I.

### INTRODUCTION

Thomas and Stacy McCormick (the McCormicks) appeal from a judgment on the pleadings entered in favor of Travelers Insurance Company (Travelers).[1] Travelers insured the McCormicks against flood loss under a standard flood insurance policy issued as part of the National Flood Insurance Program (NFIP), a federally subsidized program which provides flood insurance at reasonable rates. The McCormicks sued Travelers for wrongfully denying them insurance coverage under the policy, alleging causes of action for breach of the insurance contract, bad faith and fraud. In granting Travelers judgment on the pleadings, the trial court found that under the National Flood Insurance Act (NFIA; 42 U.S.C. § 4001 et seq.), the state court did not have jurisdiction over any aspect of the McCormicks' action.

In what is a matter of first impression for any California appellate court, we conclude the McCormicks' action against Travelers must be adjudicated

---

[1]Judgment was also entered in favor of numerous other business entities, related to Travelers, which the McCormicks also named as defendants. In their complaint, the McCormicks claimed that these entities were also "responsible in some manner" for their damages. For simplicity's sake, the term "Travelers" as used herein, shall refer to: Travelers Insurance Company, Travelers Insurance Company of Illinois, Travelers Insurance, Travelers Indemnity Company, Travelers Flood Insurance Program, Travelers Insurance America's Flood Insurance Services, America's Flood Insurance Services, America's Flood Services, Inc., and Aetna Casualty and Surety Company.

in federal court, based on a provision of the NFIA granting "original exclusive jurisdiction" to federal courts to hear claims arising out of NFIP flood insurance policies. (42 U.S.C. § 4072.) Therefore, we affirm.

## II.

### FACTS AND PROCEDURAL BACKGROUND

█ On appeal from a judgment on the pleadings, we accept as true all well pled allegations in the complaint and matters properly subject to judicial notice. (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118 [51 Cal.Rptr.2d 251, 912 P.2d 1198]; *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 27 [61 Cal.Rptr.2d 518].) So viewed, the record reveals that on January 1, 1997, the McCormicks' Orinda, California home was flooded with water from the overflowing creek adjacent to their property. The floodwaters inundated their home, leaving water in places up to eight feet high.

On December 22, 1997, the McCormicks filed a first amended complaint in Contra Costa County Superior Court alleging causes of action against Travelers for breach of the insurance contract, breach of the covenant of good faith and fair dealing, fraud and negligent misrepresentation.[2] The McCormicks alleged that prior to their home being flooded, they purchased flood insurance from Travelers, and Travelers had represented to the McCormicks that flood damage would be covered by the policy. The McCormicks relied on these representations and were induced to pay premiums for flood insurance. The McCormicks made their claim for the damage caused by the floodwaters inside their home and did all that was required of them under the policy; nevertheless, Travelers wrongfully refused to indemnify the McCormicks under the terms of the policy despite Travelers' knowledge of the facts mandating payment. As a direct and proximate result of Travelers' alleged tortious conduct, the McCormicks sought expenses to repair the flood damage; compensation for their physical, emotional, and mental distress; attorney fees; and punitive damages.

On February 17, 1998, Travelers removed the matter to federal court. Among other things, Travelers contended that it had issued the flood insurance policy to the McCormicks pursuant to the NFIP, that the language of the NFIA indicated the federal courts had original exclusive jurisdiction over the McCormicks' breach of contract claim, and that the McCormicks' extra-contractual state law tort claims were preempted.

---

[2]The McCormicks also sued the City of Orinda on both inverse condemnation and nuisance theories. However, the City of Orinda was not a party to the judgment on the pleadings; consequently, all facts with regard to the City of Orinda are omitted.

On February 27, 1998, the McCormicks filed a motion to remand the case to state court. On April 29, 1998, the federal court remanded the matter to state court. In so doing, the district court's order did not address the federal jurisdictional and preemption issues that had been raised by Travelers. Rather the case was remanded to state court solely based on Travelers' failure to meet the procedural requirements of removal.[3]

Once back in state court, Travelers filed its motion for judgment on the pleadings again arguing that, under the NFIA, federal courts have original exclusive jurisdiction over disputes arising out of disallowance of flood insurance claims, including those asserted by the McCormicks (42 U.S.C § 4072). Travelers also contended that all state law claims alleged in the McCormicks' complaint were preempted by the NFIA. The McCormicks opposed the motion, arguing that in carrying out its duties as an insurer under the NFIA, Travelers was subject to state law jurisdiction, and that they were not preempted from asserting their causes of action and damages claims. The trial court granted Travelers' motion for judgment on the pleadings. This appeal followed.

## III.

### DISCUSSION

#### A. Standard of Review

■ The standard for reviewing a judgment on the pleadings is settled: "A motion for judgment on the pleadings is the equivalent of a general demurrer but is made after the time for demurrer has expired. The rules governing demurrers apply. [Citation.] The grounds for a motion for judgment on the pleadings must appear on the face of the challenged complaint or be based on facts which the court may judicially notice. [Citations.] On review we must determine if the complaint states a cause of action as a matter of law." (*Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 548 [33 Cal.Rptr.2d 646].) "We review the complaint de novo to determine whether [it] alleges facts sufficient to state a cause of action under any legal theory. [Citation.]" (*Begier v. Strom* (1996) 46 Cal.App.4th 877, 881 [54 Cal.Rptr.2d 158].)

---

[3]In fact, realizing it had not met the procedural requirements for removal, Travelers filed a non-opposition to the remand to state court. In granting judgment on the pleadings to Travelers, the state trial court concluded that the federal court had not ruled on the NFIA jurisdictional and preemption issues: "although the United States District Court remanded this case to this Court via Judge Thelton Henderson's order of April 28, 1998, the United States District Court did not address or decide the jurisdictional and/or preemption issues brought by the Travelers defendants' current motion. Instead, it was remanded for procedural defects occurring in the removal process."

## B. *The Federal Law*

The NFIP was established by Congress in 1968 pursuant to the NFIA (see 42 U.S.C. § 4001 et seq.) to address the growing unavailability of private flood insurance policies in high-risk geographical areas, while also implementing a unified national program to reduce or avoid future flood losses. (See 42 U.S.C. § 4001; *Berger v. Pierce* (6th Cir. 1991) 933 F.2d 393, 395 (*Berger*).) As part of the NFIA, Congress expressly stated that its intent in enacting the NFIP was to make flood insurance available to those in need of such protection on reasonable terms and conditions. (See 42 U.S.C. §§ 4001(a) & (b), 4011(a); see also *Bolton v. Giuffrida* (N.D.Cal. 1983) 569 F.Supp. 30, 35)

Over time, the NFIP has undergone several major changes, especially as to the degree of federal involvement in the operation and administration of the program. Initially, under what was originally designated as part A of the NFIA, the program was administered primarily through the National Flood Insurers Association, a pool of private insurance companies, under the supervision and financial support of the Department of Housing and Urban Development (HUD). (See generally *Spence v. Omaha Indem. Ins. Co.* (5th Cir.1993) 996 F.2d 793, 794, fn. 1 (*Spence*) [discussing initial workings and organization of program under the NFIA]; *Berger, supra,* 933 F.2d at p. 395 [same].) However, on January 1, 1978, pursuant to 42 United States Code section 4071, the Secretary of HUD terminated that arrangement and assumed complete administration of the program. (See generally *In re Estate of Lee* (5th Cir. 1987) 812 F.2d 253, 256 (*Estate of Lee*) [discussing HUD takeover of NFIP].)

Then, on April 1, 1979, the Federal Emergency Management Administration (FEMA) was made principally responsible for the program's operation and administration and took full control of the payment or disallowance of all flood insurance claims. (See *Berger, supra,* 933 F.2d at p. 395.) Under this arrangement, which was designated as part B of the NFIA, the Director of FEMA was empowered by Congress to carry out the NFIP through the facilities of the federal government. (42 U.S.C. §§ 4071(a) & 4072.) In fulfilling this mandate, the Director of FEMA was authorized to utilize federal employees and/or private insurance companies and other insurers, insurance agents and brokers, and insurance adjustment organizations, who would operate specifically as fiscal agents of the United States while assisting the director in implementing the NFIP. (See *Gowland v. Aetna* (5th Cir. 1998) 143 F.3d 951, 953 (*Gowland*); *Estate of Lee, supra,* 812 F.2d at p. 256.)

In 1983, FEMA exercised this regulatory authority by creating the Write Your Own (WYO) program to assist it in the marketing and administration

of flood insurance through the "facilities of the Federal Government." (See 42 U.S.C. §§ 4081(a), 4071; 44 C.F.R. §§ 62.23 & 62.24 (2000); (*Van Holt v. Liberty Mut. Fire Ins. Co.* (3d Cir. 1998) 163 F.3d 161, 165 (*Van Holt*). Under this program, private insurance companies like Travelers, operating as WYO insurers, were authorized to issue federal flood insurance policies in their own names, collect the premiums in segregated accounts, and pay or disallow any claims under the policies. (44 C.F.R. § 62.23.)

While flood insurance can be issued either by FEMA or by private WYO insurers, in either case, FEMA fixes the terms and conditions of the policies. (44 C.F.R. §§ 61.4(b), 61.13(d), 62.23(c) & (d) (2000); see also *Gowland, supra,* 143 F.3d at p. 953.) In fact, the standard language to be included in all federal flood insurance policies is set out verbatim in the Code of Federal Regulations, and no provision of the policy may be altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator. (*Gowland, supra,* at p. 953; see 44 C.F.R. §§ 61.4(b), 61.5(e), 61.13(a), (d) & (e), 62.23(c) & (d) (2000).)

Premiums collected from policyholders by the WYO companies, after deduction of the companies' fees and administrative costs, are deposited in the National Flood Insurance Fund established by the Director of FEMA in the United States Treasury. (See 42 U.S.C. § 4017(a) & (d); *Sandia Oil Co., Inc. v. Beckton* (10th Cir. 1989) 889 F.2d 258, 263 (*Sandia Oil*); *Flick v. Liberty Mut. Fire Ins. Co.* (9th Cir. 2000) 205 F.3d 386, 395 (*Flick*).) Premiums are kept in segregated accounts, and are considered federal funds from the moment they are collected, with interest earned belonging to the United States. (See 44 C.F.R. § 62.23(d) (2000).) The WYO companies may keep funds required to meet current administrative expenditures, which are currently limited to $5,000. (See 44 C.F.R. pt. 62, appen. A., art. VII.B. (2000).)

However, "[f]lood losses, when they occur, are typically sudden, wide-spread, and costly." (*Flick, supra,* 205 F.3d at p. 393.) When a WYO insurer depletes its net premium income paying claims for flood losses, "a phenom-enon that occurs regularly because the companies must forfeit a significant portion of the proceeds from their premiums," the WYO insurer receives additional funds to pay claims by drawing on FEMA letters of credit. (*Id.* at p. 392; *Van Holt, supra,* 163 F.3d at p. 165; see 44 C.F.R. pt. 62, appen. A, art. IV.A. (2000); see generally *Gowland, supra,* 143 F.3d at p. 955; *Spence, supra,* 996 F.2d at p. 795, fn. 12; *Estate of Lee, supra,* 812 F.2d at p. 256.)

Flood insurance issued by a WYO insurer under the NFIP differs from traditional private sector insurance in several important respects. Primarily,

because the NFIP provides flood insurance at below actuarial rates, the income generated from premiums is not adequate to sustain the program. "[R]egardless whether FEMA or a WYO company issues a flood insurance policy, the United States treasury funds pay off the insureds' claims. [Citations.]" (*Van Holt, supra,* 163 F.3d at p. 165; see also *Wagner v. Director, Federal Emergency Mgmt. Agency* (9th Cir. 1988) 847 F.2d 515, 516.) Although the NFIP will never be profitable (*Sandia Oil, supra,* 889 F.2d at p. 263), the federal government still derives a net benefit from its existence. "[M]aking flood insurance available, even at below actuarial rates, spreads the risk of massive-disaster related expenses. In the absence of privately-procured insurance, the Federal Treasury historically bore the risk of these disasters alone." (*Davis v. Travelers Property and Cas. Co.* (N.D.Cal. 2000) 96 F.Supp.2d 995, 1002.)

Furthermore, WYO insurers are not compensated through premiums because they must remit those payments to the federal government, with the exception of a small amount necessary to meet current expenditures. (*Flick, supra,* 205 F.3d at pp. 392-393; *Van Holt, supra,* 163 F.2d at p. 165.) Earnings only result when WYO insurers approve a claim and authorize payment, in which case they receive a 3.3 percent commission on the amounts that are paid. (44 C.F.R. pt. 62, appen. A, art. III.C.1. (2000).) Therefore, not only does a WYO insurer have an incentive to approve a claim, but the greater the payment, the larger the amount the WYO insurer recovers.

The pedigree of the WYO program unquestionably derives from a direct delegation of FEMA's authority under the NFIA allowing it to contract with insurers to provide below-market-rate flood insurance to United States citizens in need of such coverage. (42 U.S.C. § 4071.) Nevertheless, the relationship between WYO insurers and FEMA is ambiguous, and somewhat inconsistently described in FEMA's regulations, which implement the program. For example, after noting the fiduciary nature of the relationship between FEMA and the WYO insurers (44 C.F.R. § 62.23(f) (2000)), the regulations go on to state that "WYO companies shall not be agents of the Federal Government . . . ." (44 C.F.R. § 62.23(g) (2000).)[4] WYO companies have the responsibility to defend against flood insurance claims, and FEMA is required to reimburse them for their defense costs as well as reimburse them for awards or judgments for damages "pursuant to

---

[4] In the context of the program, it is not at all clear what FEMA intended by the inclusion of this language in its regulations. Judicial interpretation has failed to shed a clarifying light. While it has been noted that WYO insurers are "fiscal agents of the United States" (*Gowland, supra,* 143 F.3d at p. 953, fn. omitted), it has also been stressed they are not "general agents" of the federal government. (*Van Holt, supra,* 163 F.3d at p. 165.)

the Arrangement . . . ." (44 C.F.R. § 62.23(i)(6) (2000).) Yet, FEMA reimbursement of WYO insurers' expenses does not include costs associated with the delays, errors or omissions which the insurer has been afforded an opportunity to rectify and has refused to do so. (44 C.F.R. pt. 62, appen. A, art. IX (2000).) The NFIA itself provides that the Director of FEMA "may not hold harmless or indemnify an agent or broker for his or her error or omission." (42 U.S.C. § 4081(c).) In that event, the insurer "shall bear all liability attached to that delay, error or omission to the extent permissible by law." (44 C.F.R. pt. 62, appen. A, arts. IX & III.D. 2. (2000).)

As noted, FEMA regulations also specify the content of each and every flood insurance policy issued under the WYO program. (44 C.F.R. pt. 61, appen. A (2000).) Article 9, paragraph R of the Standard Flood Insurance Policy states as follows: "Conditions for Filing a Lawsuit: You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within 12 months from the date we mailed you notice that we have denied your claim, or part of your claim, and *you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss.*" (44 C.F.R. pt. 61, appen. A, art. 9, ¶ R, italics added.) This provision was included in the standard flood insurance policy issued to the McCormicks.[5]

C. *Exclusive Original Federal Jurisdiction of Claims Under the NFIA*

While the area of insurance has been traditionally occupied by state law, a federal flood policy issued by a WYO insurer is governed by "a pervasive and comprehensive scheme of federal regulations setting forth the rights and responsibilities of insureds and insurers under the NFIP." (*Davis v. Travelers Property and Cas. Co., supra,* 96 F.Supp. 2d at p. 1002.) We start with the plain language of 42 United States Code section 4072, the only section of the NFIA directly addressing jurisdiction. The key language of the statute provides, in pertinent part, "[U]pon the disallowance by the Director [of FEMA] of any . . . claim, or upon the refusal of the claimant to accept the amount allowed upon any . . . claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim . . . and *original exclusive jurisdiction* is hereby conferred upon . . . [the United

---

[5]The record before us does not contain the actual standard flood insurance policy issued to the McCormicks, although it appears to be uncontroverted that its terms embodied those reflected in the federal regulations.

States District Court] to hear and determine such action without regard to the amount in controversy."[6] (Italics added.)

The McCormicks point out that section 42 United States Code section 4072 appears to limit exclusive federal jurisdiction to actions against the Director of FEMA, and makes no mention of actions against WYO companies. They argue that this omission is "proof that there never [has] been exclusive federal jurisdiction of these claims." This argument was rejected in *Van Holt*, in which the court reasoned that because FEMA bears the ultimate risk and financial responsibility on contract claims regardless of whether FEMA or a WYO insurer is the named defendant, it would be illogical to have original exclusive federal jurisdiction over suits against FEMA, but not suits in which a WYO insurer is named as the nominal defendant. (*Van Holt*, *supra*, 163 F.3d at p. 167.)

A similar result was reached in *Masoner v. First Community Ins. Co.* (D. Idaho 2000) 81 F.Supp.2d 1052, 1056-1057 (*Masoner*)). In following *Van Holt*, the *Masoner* court concluded: " 'Thus, a lawsuit against a WYO company is, in reality, a suit against FEMA.' [Citation.] Although the Court is not bound by *Van Holt*, the reasoning therein is nevertheless persuasive, for it is clear that FEMA would ultimately be responsible for any judgment against [the WYO insurer] in this case." (*Id.* at pp. 1056-1057.)

Moreover, as we have noted, the flood insurance policies under the WYO program are issued in the name of the WYO as insurer, despite the reality that the federal fisc stands behind the policies. Included as one of the standard provisions required to be included in all NFIP policies is a provision which reminds insureds that '[y]ou may not sue *us* to recover money under this policy unless you have complied with all the requirements of the policy." (44 C.F.R. pt. 61, appen. A, art. 9, ¶ R, italics added.) There can be little quarrel that the "us" referred to in the contractual provision includes at least *both* FEMA and the WYO insurer; in this case, Travelers.

The McCormicks argue prophylactically that, even if their contract claim against Travelers falls within the "original exclusive jurisdiction" of the federal court (42 U.S.C. § 4072), "[t]he gravamen of [their] action sounds in tort under California bad faith law." (Fn. omitted.) They point out allegations

---

[6]In 1983, Congress amended United States Code section 4072 by adding the words "original exclusive" to precede the word "jurisdiction." United States Code section 4053, governing actions against private insurers under part A, was amended in a similar manner. Part A was used until 1978, after which part A was discontinued and part B was implemented. (See *Berger, supra*, 933 F.2d at p. 395; *Van Holt, supra*, 163 F.3d at p. 166.) Here, both parties agree that the McCormicks' policy was issued under part B of the NFIP. Therefore, 42 United States Code section 4072 is the statute governing our analysis.

in their complaint that Travelers made material misrepresentations regarding the coverage of their flood insurance policy and acted in bad faith with respect to the handling of their claim. They go on to argue that their "theories of tortuous [*sic*] breach of the implied covenant of good faith and fair dealing, fraud, and/or negligent misrepresentation overlap with the breach of contract theory," and if they prevail on these tort theories, "the contract claim becomes moot."[7]

These arguments reflect the McCormicks' view that, at most, the NFIA merely confers exclusive jurisdiction on the federal courts to adjudicate *contractual* causes of action based on an insurer's failure to pay a claim—it does not preclude state law tort and statutory claims based on an insurer's claims handling from being considered by state courts under principles of concurrent jurisdiction. We disagree.

In considering similar arguments, other courts have strictly enforced the mandate of exclusive federal jurisdiction where a WYO insurer is the named defendant, regardless of whether the claims asserted include state law causes of action based on tort or statute. For example, in *Masoner, supra*, 81 F.Supp.2d 1052, the WYO insurer had been sued for bad faith failure to properly adjust and pay a claim for flood damage. The complaint alleged four causes of action; bad faith failure in denying and delaying payment of plaintiffs' claim, engaging in bad faith underwriting practices, and fraud, in addition to breach of contract. (*Id.* at pp. 1052-1053.) Despite the inclusion of tort causes of action, the court concluded that all of the claims asserted fell within the exclusive jurisdiction of the federal courts, and thus, the plaintiffs' motion to remand the case to state court for adjudication of these claims was denied. (*Id.* at pp. 1056-1057.)

Of even more recency is *Jamal v. Travelers Lloyds of Texas Ins. Co.* (S.D.Tex. 2000) 97 F.Supp.2d 800 (*Jamal*), in which an insured homeowner sued the WYO insurer alleging breach of contract, bad faith, and violations of the Texas Insurance Code. (*Id.* at p. 802.) The plaintiff sought to remand the case to state court, arguing "the NFIA does not preempt state law claims and any interpretation of the NFIA is, at best, tangential to the outcome of this case." (*Ibid.*) The court rejected this argument, concluding that "pursuant to statute, federal courts have exclusive jurisdiction over disputes arising under [standard flood insurance policies], and, thus, jurisdiction is lacking in state court. . . . Hence, remand is not warranted." (*Id.* at p. 806.)

---

[7]In making these arguments, the McCormicks concede, in accordance with the overwhelming weight of authority, that to the extent their causes of action alleging bad faith and misrepresentation require interpretation of the insurance contract, federal common and statutory law preempts state principles of contract law. (See *Flick, supra*, 205 F.3d at p. 390; *Berger, supra*, 933 F.2d at p. 396; *Hanover Bldg. Materials, Inc. v. Guiffrida* (5th Cir. 1984) 748 F.2d 1011, 1013; *West v. Harris* (5th Cir. 1978) 573 F.2d 873, 881-882 (*West*).)

In *Gibson v. American Bankers Ins. Co.* (E.D.Ky. 2000) 91 F.Supp.2d 1037, the plaintiffs sued the WYO insurer in state court for breach of the flood insurance policy "in violation of the Kentucky Unfair Claims Settlement Statute and the fiduciary duties of good faith and fair dealing." (*Id.* at p. 1039.) Following removal to federal court, the WYO insurer moved to dismiss on the ground that the plaintiffs had failed to file the action in federal court within one year of the denial of their flood insurance claim as required by 42 United States Code section 4072. The district court granted the motion to dismiss. The court explained its ruling as follows: "By the clear mandate of the NFIA, the only court of competent jurisdiction in an action under that statute is a federal district court, which has 'original exclusive jurisdiction.' 42 U.S.C. § 4072. . . . When Plaintiffs filed their complaint asserting what was exclusively a NFIA cause of action in the Pike Circuit Court, that state court was a clearly inappropriate forum for filing such a claim. . . ." (91 F.Supp.2d at p. 1043.) The court reasoned that because "the text of the NFIA 'affirmatively divests' jurisdiction of NFIP claims from the state to the federal courts," the initial filing of the action in state court did not protect plaintiffs from the running of the statute of limitations. (*Id.* at p. 1044.)

Recently, in *Jang v. State Farm Fire & Casualty Co.* (2000) 80 Cal.App.4th 1291 [95 Cal.Rptr.2d 917], we considered whether a bad faith tort action against a fire insurer constituted an action "on the policy" and thus, was subject to California's one-year statute of limitations for such actions. In that case, Jang sought to avoid the bar of the one-year limitations period by contending her bad faith cross-complaint was a tort-based claim and that only contract-based claims were "on the policy." (*Id.* at p. 1296.) We concluded that Jang's bad faith cross-complaint was indeed an action "on the policy" subject to the one-year limitations period. In doing so, we disagreed with those cases allowing an insured to "avoid the policy's statute of limitations by simply recasting contractual claims as claims sounding in tort . . . ." (*Id.* at p. 1301.) Instead, we ruled that "[r]egardless of whether the insured elects to file a complaint alleging solely tort claims, we hold that an action seeking damages recoverable under the policy for a risk insured under the policy is merely a 'transparent attempt to recover Evid. Code, *on the policy.*' [Citations.] As such, it is subject to the policy's statute of limitations." (*Ibid.*, italics omitted.)

Informed by this analogue, and the above noted authorities, we find no reason to limit federal jurisdiction based on a distinction between whether the asserted claims are based strictly in contract, or whether they include state tort and statutory claims arising from the duties imposed on WYO insurers by the NFIA and NFIP. Indeed, regardless of how the claims are

cast, part of appellants' pleaded damages as to each are the very flood insurance benefits—enhanced by claims for interest, attorney fees, tort, and punitive damages—to which the McCormicks claim they are entitled under their flood insurance policy.

Our conclusion is also consistent with how FEMA views its relationship with its WYO insurers. At Travelers' request, we take judicial notice of an amicus curiae brief submitted by the United States on behalf of FEMA in *Van Holt* when that case was pending before the Third Circuit Court of Appeals. ▪ As FEMA is the agency charged with administering the NFIP, we must give great weight to its "construction of statutes it is charged with implementing and enforcing. Such a construction will be adhered to unless clearly erroneous or unauthorized [citations], that is, unless it was arbitrary, capricious or had no reasonable or rational basis [citation]." (*General American Transportation Corp. v. State Bd. of Equalization* (1987) 193 Cal.App.3d 1175, 1182 [238 Cal.Rptr. 865].) We note this amicus curiae brief is referred to extensively in *Van Holt, supra,* 163 F.3d at pages 164-166 and *Scherz v. South Carolina Ins. Co.* (C.D.Cal. 2000) 112 F.Supp.2d 1000.

▪ In its brief, the United States stresses the imperative of providing for uniformity in the administration of the NFIA: "The United States has a significant interest in how operation of the program is dealt with in the courts, because the terms of the Standard Flood Insurance Policy . . . are fixed by FEMA regulation on a nationwide basis; because Congress has vested FEMA with the authority to establish the way claims are to be proved, adjusted, and paid; and because the claims investigation and adjustment process is and must be governed by uniform federal law. The United States thus has a compelling interest in assuring that State regulators and State courts do not—directly or indirectly, by construction of policies or scrutinizing the investigation and adjustment of claims, or by threatening to do so—undermine operation of this federal program."

FEMA has crystallized its position in a "final rule" published in the Federal Register, which became effective on December 31, 2000. (65 Fed.Reg. 60758 (Oct. 12, 2000).) The rule states "that matters pertaining to the Standard Flood Insurance Policy, including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal Law." (65 Fed.Reg. 34827; see also 65 Fed. Reg. 34824 (May 31, 2000).)

After briefing, the McCormicks informed us by letter of *Moore v. Allstate Ins. Co.* (Alaska 2000) 995 P.2d 231 (*Moore*), in which the Alaska Supreme Court concluded that a WYO is subject to Alaska state court jurisdiction for

claims of misrepresentation and fraud in misrepresenting the scope of flood coverage procured under the NFIP. It was alleged that Allstate's agent assured the plaintiff at the time coverage was placed that the policy would "cover her 'for [the] full replacement value of the house.' " (*Id.* at p. 232.) In fact, the policy only provided coverage up to 40 percent of the fair market value of the home. (*Id.* at p. 233.)

After analyzing federal preemption cases, and concluding that state claims were neither preempted by federal law nor subject to exclusive federal jurisdiction under the policy's forum selection clause, the court held that the fraud and misrepresentation claims could be litigated in state court: "The applicability of section 4072 [conferring 'original exclusive jurisdiction' to federal courts] to WYO insurers is limited to claims attempting to interpret or enforce [standard flood insurance policy] terms, and section 4072 does not apply to claims in tort against WYO insurers for fraud or misrepresentation." (*Moore, supra,* 995 P.2d at p. 239.)

The court footnoted the authorities it relied on for this conclusion, candidly noting the paucity of analysis provided in the cited opinions supporting the proposition: "See *Phillips v. State Farm Fire & Cas. Co.,* 1993 WL 386291, at *2 (Ohio App.1993) (exercising state jurisdiction over misrepresentation and bad faith claims, with one paragraph discussion of jurisdictional issue); *Kitching v. Zamora,* 695 S.W.2d 553, 554 (Tex.1985) (exercising state jurisdiction over agent's negligence in allowing NFIP policy to lapse, without discussing jurisdictional issue); *Dewitt v. Prudential Ins. Co.,* 717 S.W.2d 414, 416-17 (Tex.App.1986) (exercising state jurisdiction over state Deceptive Trade Practices claim relating to NFIP policy, without discussing jurisdictional issue)." (*Moore, supra,* 995 P.2d at p. 239, fn. 59.) Having been decided on January 21, 2000, the Alaska Supreme Court did not have the benefit of the *Jamal* or *Gibson* decisions discussed above.[8] Although *Masoner* was filed on January 13, 2000, there is no mention of it in *Moore.*

In holding that the federal courts have not retained exclusive jurisdiction over fraud and misrepresentation claims brought against WYO insurers, *Moore* principally relied on *Spence, supra,* 996 F.2d 793. (*Moore, supra,* 995 P.2d at pp. 237-238.) In *Spence,* the insured brought a lawsuit against a WYO insurer alleging breach of contract and fraud for misrepresenting the scope of coverage. The *Spence* case held that certain state tort claims against WYO insurers were not preempted by the NFIA, basing its ruling upon changes in the NFIA that allegedly made it clear that Congress and FEMA

---

[8]*Gibson* was filed on March 23, 2000, and the Alaska Supreme Court denied rehearing in *Moore* on March 21, 2000. *Jamal* was decided on May 30, 2000.

(in adopting implementing regulations) contemplated state-based tort claims being brought against WYO insurers. (*Spence, supra,* 996 F.2d at pp. 796-797.) But the lawsuit in *Spence* was brought and adjudicated in federal court. Consequently, it did not concern itself with the question presented here—whether insureds who are involved in disputes with their WYO insurers over the handling of their claims have the ability to seek adjudication of their claims in a state law forum or whether federal courts have exclusive jurisdiction over these claims.[9] Thus, there is little, if anything, to find in *Spence* to guide the Alaska Supreme Court in reaching its decision that there was state court subject matter jurisdiction over any of the claims brought against the WYO insurer.

Apparently also of importance to the *Moore* court was its conclusion that "the federal government would not indemnify a WYO insurer for a loss caused by fraud or misrepresentation." (*Moore, supra,* 995 P.2d at p. 237.) This point is made by the McCormicks as well, who contend Congress and FEMA, in adopting certain statutes and implementing regulations, contemplated that state-based tort claims might be brought against WYO insurers. Specifically, in 1981, Congress enacted 42 United States Code section 4081(c), which provides that FEMA "may not hold harmless or indemnify an agent or broker for his or her error or omission." (See also 44 C.F.R. pt. 62, App. A, art. IX (2000).) They argue these enactments necessarily imply that WYO insurers selling flood insurance policies may sometimes be held liable to their insureds for their errors and omissions under state tort and statutory causes of action. At oral argument, Travelers disputed this interpretation and argued these provisions relate solely to disputes that may arise between the WYO insurers and FEMA, and are not indicative of an intent to make WYO insurers liable under state law to third parties.

We need not offer our own guess as to the meaning or intent of these provisions for they are not dispositive of the jurisdictional issue presented. While the view adopted by the *Moore* court may advance a determination of the federal preemption issue, it does not answer the question of whether, assuming state tort and statutory claims are not preempted by the NFIA, a state court has subject matter jurisdiction over them. In short, deciding that state tort remedies may be brought against WYO insurers does not resolve the question as to *where* these claims may be brought.

Nor do we regard as significant that the state law claims in *Moore* sought recovery for deceit occurring at the inception of the policy, and not for the

---

[9]Of interest is footnote 2 in *Spence* in which the procedural history of the case is discussed. (*Spence, supra,* 996 F.2d at p. 794, fn. 2.) The court mentioned that two prior suits had been filed by the plaintiffs against Omaha, one of which had been dismissed for "want of jurisdiction." Unfortunately, the court does not identify if that prior suit had been initiated in state court.

manner in which plaintiff's claim was processed. In enunciating the parameters of its holding, the *Moore* court stated: "[W]hile federal courts have exclusive jurisdiction over direct claims under the policy, the state has jurisdiction over . . . claims that are based on the relationship between" the insured and the WYO's agent and what the agent "reportedly promised or agreed to obtain." (*Moore, supra,* 995 P.2d at p. 239.)

We see no basis for turning the jurisdictional question on a distinction between errors allegedly committed while explaining the scope of coverage to a new policyholder and errors allegedly committed in interpreting the amount of insurance proceeds to which the policyholder is entitled following a loss. The breadth of activities WYO insurers pursue in furtherance of the NFIP encompasses procuring policies, servicing the accounts, and processing claims. At all of these stages of the insured/insurer relationship, the workings of the NFIP are intimately involved. Moreover, treating some claims as exclusively within the jurisdiction of the federal courts and some within the concurrent subject matter jurisdiction of state courts invites the very balkanization of lawsuits FEMA forecasts with justifiable dread in its amicus curiae brief.

Our own case illustrates the potential vice in treating misrepresentation claims jurisdictionally unique under the NFIA. In describing the interplay between the claims of misrepresentation and bad faith alleged in the first amended complaint, the McCormicks state in their opening brief: "These causes of action for misrepresentation are essentially alternative causes of action to the 'Bad Faith' cause. If coverage is ultimately held to be as interpreted by Travelers (e.g. that the Flood Policy does not cover damage from flood water <u>below</u> the standing water line inside the house), then the policy was misrepresented to the McCormicks at the time of purchase." (Original underscoring.)

Therefore, were we to follow *Moore,* we would necessarily put our imprimatur on the McCormicks' strategy of allowing them to litigate in a federal forum their coverage dispute (which a state court unquestionably does not have jurisdiction to decide), while allowing their misrepresentation and related state claims to repose in state court awaiting the outcome of the federal action. Surely, this orphaning of the "child of Congress" to 50 state court jurisdictions was not the intention of Congress in establishing "a pervasive and comprehensive scheme of federal regulations setting forth the rights and responsibilities of insureds and insurers under the NFIP." (*West, supra,* 573 F.2d at p. 881; *Davis v. Travelers Property and Cas. Co., supra,* 96 F.Supp.2d at p. 1002.)

For all of these reasons we find the decision in *Moore* unpersuasive. Instead, like the federal courts, which have squarely decided the

issue, we conclude that the federal courts have exclusive jurisdiction over all of the claims asserted in the McCormicks' first amended complaint. This exclusive jurisdiction encompasses all claims regardless of whether they plead contract, tort, or state statutory remedies and damages, and regardless of whether the named defendant is the FEMA or a WYO insurer.

## D. *Conclusion*

In light of our determination of the jurisdictional issue raised by Travelers, we need not address Travelers' alternative argument that the state law claims in the McCormicks' complaint are barred by the doctrine of federal preemption. As we have noted in passing, there is a significant split of federal authority on the question of whether the NFIA precludes state law remedies based on the manner in which the WYO insurer carries out its duties under the NFIP. In addition to those noted in the course of our analysis of the jurisdictional issue, a number of cases hold that NFIA preempts all state law claims, either expressly or impliedly. (See, e.g., *Stapleton v. State Farm Fire and Cas. Co.* (M.D.Fla. 1998) 11 F.Supp.2d 1344; *West, supra,* 573 F.2d 873; *Mason v. Witt* (E.D.Cal. 1999) 74 F.Supp.2d 955, 959; *Berger, supra,* 933 F.2d at p. 395; *Durkin v. State Farm Mut. Ins. Co.* (E.D.La. 1997) 3 F.Supp.2d 724, 728; and *Bianchi v. State Farm Fire and Cas. Co.* (N.D.Cal 2000) 120 F.Supp.2d 837.) Other cases have found that in enacting NFIA, Congress contemplated state law could apply to the conduct of WYO insurers. (See, e.g., *Zumbrun v. United Services Auto. Ass'n* (E.D.Cal. 1989) 719 F.Supp. 890, 894-895; *Spence, supra,* 996 F.2d at p. 796.)[10] Given our view that matters under the NFIA and NFIP are uniquely within federal court jurisdiction, the question of preemption, which can hardly be said to be without controversy, is properly left to that forum's determination.

---

[10]Two additional cases have found no preemption by substantially relying on another federal district court decision (*Cohen v. State Farm Fire and Cas.* (C.D.Cal. 1999) 68 F.Supp.2d 1151; see *Stanton v. State Farm Fire and Cas. Co., Inc.* (D.S.D. 1999) 78 F.Supp.2d 1029, 1036 ["*Cohen* is, in the humble opinion of this Court, the first decision with an in depth analysis of the NFIA and its regulations and the application of the preemption principles . . . ."]; *Davis v. Travelers Property and Cas. Co., supra,* 96 F.Supp.2d at p. 1002 ["the Court agrees with *Cohen* that FEMA's regulatory scheme does not occupy the flood-insurance field to the exclusion of state law as to claims concerning improper handling."]). However, the same judge who decided *Cohen* reversed his view in a subsequent case, concluding that state-law-based insurance claims, including bad faith claims under California law, were preempted by the federal scheme. (*Scherz v. South Carolina Ins. Co., supra,* 112 F.Supp.2d 1000.)

## IV.

### DISPOSITION

The judgment is affirmed.

Kline, P. J., and Lambden, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 18, 2001.