Filed 9/26/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ENVIRONMENTAL HEALTH ADVOCATES, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SREAM, INC.,<br><br>    Defendant and Respondent. | A163346<br><br>(Alameda County<br>Super. Ct. No. HG20079925) |

    Environmental Health Advocates, Inc. (EHA) filed a private enforcement action against Sream, Inc. (Sream), alleging Sream had failed to provide a warning that its water pipe products exposed consumers to marijuana smoke in violation of California's Safe Drinking Water and Toxic Enforcement Act of 1986 (Health & Saf. Code, § 25249.5 et seq.),[1] commonly known as Proposition 65 based on its enacting initiative.

    The trial court granted Sream's motion for judgment on the pleadings, finding EHA had not alleged that Sream's water pipes require marijuana to function or can only be used with marijuana. The trial court concluded that, under the facts as alleged by EHA, Sream's water pipe products were not subject to Proposition 65. It dismissed the action with prejudice.

---

[1] Further undesignated code references are to the Health and Safety Code.

1

EHA now challenges this ruling on appeal, arguing that the trial court (1) erred in applying the wrong test to determine whether a Proposition 65 warning was required for Sream's products and making disputed factual findings under that test; and (2) abused its discretion in denying EHA's request for leave to amend.  We affirm.

## BACKGROUND

### A.  *Proposition 65*

Proposition 65 was enacted as an initiative measure in 1986 and added sections 25249.6 through 25249.13 to the Health and Safety Code.  (*Nicolle-Wagner v. Deukmejian* (1991) 230 Cal.App.3d 652, 654–655 (*Nicolle-Wagner*).)  Section 25249.6 provides:  "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10."[2]

Section 25249.12 requires the Governor to designate a "lead agency" to implement the provisions of Proposition 65.  That agency has the authority to "adopt and modify regulations, standards, and permits as necessary to conform with and implement this chapter and to further its purposes." (§ 25249.12, subd. (a).)  The Governor originally designated the Health and Welfare Agency as the lead agency for Proposition 65.  (*Nicolle-Wagner*, *supra*, 230 Cal.App.3d at p. 655.)  In 1995, the California Environmental Protection Agency's Office of Environmental Health Hazard Assessment

---

[2] Section 25249.10 sets forth certain exemptions not relevant here, including exposures "for which federal law governs warning in a manner that preempts state authority."  (§ 25249.10, subd. (a).)

2

(OEHHA) was designated as the lead agency. (Cal. Code. Regs., tit. 27, § 25102, subd. (o).)[3]

Section 25249.8 also requires the Governor to "cause to be published a list of those chemicals known to the state to cause cancer or reproductive toxicity within the meaning of this chapter," which is to be "revised and republished in light of additional knowledge at least once per year thereafter." (§ 25249.8, subd. (a).) "Marijuana smoke" was added to the list of carcinogens in 2009. (Regs., § 27001, subd. (b).)

In 2016, OEHHA adopted regulations concerning " 'safe harbor' " warnings as set forth in article 6 (Regs., §§ 25600–25607.35).[4] (OEHHA, Final Statement of Reasons, 27 Cal. Code Regs., art. 6 (Sept. 2016) p. 9 (2016 FSOR).) Among other things, they contained definitions relevant to article 6 and set forth a new regulation "addressing the relative responsibility of product manufacturers and others in the chain of distribution, versus the product retail seller." (2016 FSOR, *supra*, p. 9.)

---

[3] Further references to "Regulations" are to title 27 of the California Code of Regulations except as otherwise specified (e.g., Regs., § 25102).

[4] As explained above, Proposition 65 requires "clear and reasonable" warnings. (§ 25249.6.) Article 6 describes " 'safe harbor' " warnings, which are deemed by the lead agency to meet this "clear and reasonable" standard. (Regs., § 25600, subd. (a).) In enacting these regulations, the original lead agency explained: "it is necessary to provide businesses with an opportunity to be certain that the warning which they give is reasonable or clear, or both," and "providing general 'safe harbor' warning methods and messages which are deemed sufficient without further proof is a reasonable means to accomplish this result." (Health & Welf. Agency, Revised Final Statement of Reasons, 22 Cal. Code Regs., Div. 2 (Nov. 1988) pp. 7–8 (1988 RFSOR).) In other words, businesses are not required to give "safe harbor" warnings and they are not the only "clear and reasonable" warnings available. (*Id.* at p. 8.) "The 'safe harbor' is offered simply to provide the businesses choosing to use them reasonable certainty that they will not be subjected to an enforcement action over the warning they provide." (*Ibid.*)

## B. *EHA's Enforcement Action*

EHA filed a complaint against Sream on November 12, 2020, asserting a single cause of action for violation of Proposition 65. The complaint alleged that Sream "exposes consumers to marijuana smoke by manufacturing, importing, selling, and/or distributing Roor Classic Straight 5mm Orange & Blue and other similar bong/water pipe products ('Products')." It further alleged that this exposure constituted a violation of section 25249.6 because Sream had failed to provide a clear and reasonable warning to consumers and individuals in California "who may be exposed to marijuana smoke through reasonably foreseeable use of the Products." EHA sought civil penalties for Sream's alleged violations of Proposition 65; injunctive relief against Sream from manufacturing, importing, selling, and/or distributing the products without a clear and reasonable warning; and attorney fees and costs.

## C. *Sream's Water Pipes*

Sream is based in California and manufactures water pipes with the Roor trademark as the exclusive licensee of the brand within the United States. A water pipe typically consists of a chamber that contains water, along with a mounted bowl that contains a particular substance. A user can burn the substance and create suction to draw smoke through the water, where the smoke is cooled before it is ultimately inhaled.

According to Sream, its packaging and labels have long included the statement that such products "should be sold, marketed or used for legal, non-prohibited use only." Since July 2020, Sream has also placed the following label on its products as a "purely defensive" measure: "WARNING: This product can expose you to chemicals including arsenic, which is known

4

to the State of California to cause cancer.  For more information, go to www.P65Warnings.ca.gov."[5]

## D.  *Judgment on the Pleadings*

Sream moved for judgment on the pleadings, arguing that Proposition 65 did not apply to its water pipe products.  The trial court granted the motion.  It stated: "Plaintiff does not allege that Defendant's 'bong/water pipe products' that are the subject of this action contain any chemical that causes cancer or reproductive toxicity or that they necessarily emanate any such chemical.  Rather, Plaintiff alleges that Defendant's products, if used with marijuana, produce marijuana smoke, which is a carcinogen regulated by Proposition 65.  Plaintiff does not allege that the Defendant's products can only be used with marijuana, or that their use with other substances emanates any carcinogen subject to Proposition 65."

The trial court continued:  "Plaintiff cites no case holding that a product that does not contain any chemical causing cancer or reproductive toxicity is subject to Proposition 65 merely because it could potentially be used with a substance that can be carcinogenic."  It found EHA's allegation— that it was "reasonably foreseeable" consumers may be exposed to marijuana, depending on how they choose to use a water pipe—insufficient to subject manufacturers or distributors of such products to Proposition 65 requirements.  The trial court determined that, under the facts as alleged by

---

[5] Pursuant to Regulations section 25601, subdivision (b), a safe-harbor warning need only include the name of "at least one" chemical known to cause cancer.  (2016 FSOR, *supra*, p. 67.)  Sream has not explained why arsenic is the chemical specified in the current Proposition 65 warning.

EHA, Sream's products were not subject to Proposition 65 and dismissed the action with prejudice.  This appeal followed.[6]

**DISCUSSION**

In this appeal, EHA seeks reversal of the judgment on the pleadings and dismissal of its action with prejudice.

A defendant may move for judgment on the pleadings on the ground that the complaint does not state facts sufficient to constitute a cause of action against that defendant.  (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii).) A motion for judgment on the pleadings "is equivalent to a demurrer and is governed by the same de novo standard of review." (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672.)  " 'The grounds for a motion for judgment on the pleadings must appear on the face of the challenged complaint or be based on facts which the court may judicially notice.' " (*McCormick v. Travelers Ins. Co.* (2001) 86 Cal.App.4th 404, 408.)  Where the plaintiff appeals from a judgment on the pleadings, we accept and liberally construe all properly pleaded factual allegations, but not contentions,

---

[6] Both parties filed unopposed requests for judicial notice with their briefing on appeal.  We granted Sream's request, but deferred ruling on EHA's request until the merits of the appeal.  (See *People v. Preslie* (1977) 70 Cal.App.3d 486, 493–494.)  We now grant EHA's request to take judicial notice of exhibit 12, a photocopy of online advertising for the "Roor Classic Straight 5mm water pipe."  EHA asks us to take judicial notice of 12 additional documents, most of which are articles pertaining to the public health risks associated with marijuana use, none of which were presented to the trial court.  "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)  In exceptional circumstances, an appellate court can, but is not required to, take judicial notice of material that was not presented to the trial court in the first instance.  (*Ibid.*; see *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325.)  EHA has not presented any exceptional circumstances.  We thus follow the general rule and decline to exercise our discretion to take judicial notice of these documents.

6

deductions or conclusions of fact or law.  (*Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 127.)  "If a judgment on the pleadings is correct on any theory of law applicable to the case, we will affirm it regardless of the considerations used by the superior court to reach its conclusion."  (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 185.)  "Denial of leave to amend after granting a motion for judgment on the pleadings is reviewed for abuse of discretion."  (*Ott v. Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1448.)

Here, EHA argues in the alternative that either (1) the trial court erred in granting the motion for judgment on the pleadings upon finding there were insufficient facts to constitute a Proposition 65 claim against Sream; or (2) the trial court abused its discretion in denying EHA leave to amend.  We address each argument in turn.

## I.  No Error in Granting Judgment on Pleadings

EHA argues that the trial court erred in granting Sream's motion for judgment on the pleadings based on an "erroneous and incorrect" test for determining whether a Proposition 65 warning was required.  Section 25249.6 states, in relevant part, that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual[.]"  The key question is thus one of statutory interpretation:  whether Sream's water pipe products "expose" consumers to marijuana smoke within the meaning of section 25249.6.

In answering such a question, " 'our primary task is to determine the lawmakers' intent' " and the process "to ascertain that intent may involve up to three steps."  (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082.)  First, we look to the words of the statute

itself as "chosen language is the most reliable indicator of its intent." (*Id.* at p. 1082.) "If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction." (*Id.* at p. 1083.) When the plain meaning of the text does not resolve the question, we proceed to the second step and turn to maxims of construction and extrinsic aids, including legislative history materials. (*Ibid.*) We may also look to the interpretation of a statute by the administrative agency with the power to adopt regulations to effectuate the statutory purpose. (*Lee v. Amazon.com, Inc.* (2022) 76 Cal.App.5th 200, 229 (*Lee*).) "We defer, to some extent, to the technical skill and expertise of the rulemaking agency in interpreting the statutes at issue." (*Nicolle-Wagner*, *supra*, 230 Cal.App.3d at p. 658.) "While the construction of a statute by officials charged with its administration, including their interpretation of the authority invested in them to implement and carry out its provisions, is entitled to great weight, nevertheless '[w]hatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts." (*Morris v. Williams* (1967) 67 Cal.2d 733, 749.) If ambiguity remains, we "must cautiously take the third and final step" and "apply 'reason, practicality, and common sense to the language at hand.' " (*MacIsaac*, at p. 1084.)

We conclude that the plain language of section 25249.6 is not dispositive here. The term "expose" is not defined anywhere in Proposition 65. (See § 25249.11 [containing definitions for the purpose of the chapter].) "When a term goes undefined in a statute, we give the term its ordinary meaning." (*Taniguchi v. Kan Pacific Saipan, Ltd.* (2012) 566 U.S. 560, 566.) "In divining a term's 'ordinary meaning,' courts regularly turn to general and legal dictionaries." (*De Vries v. Regents of University of California* (2016) 6 Cal.App.5th 574, 591.) Courts, however, "must exercise 'great caution'

8

when relying on a dictionary definition of a common term to determine statutory meaning because a dictionary ' "is a museum of words, an historical catalog rather than a means to decode the work of legislatures." ' " (*A.S. v. Miller* (2019) 34 Cal.App.5th 284, 293, fn. 4.) Dictionary definitions of the term "expose" include " '[t]o lay open (to danger, ridicule, censure, etc.)' " and " 'to lay open (as to attack, danger, trial, or test).' " (*Lee*, *supra*, 76 Cal.App.5th at p. 247 [citing Oxford English Dict. Online; Merriam-Webster Dict. Online].) These common dictionary definitions, which appear to emphasize the effect of visibility, do not fully resolve the question of whether water pipes "expose" consumers to marijuana smoke under section 25249.6. (See also *People v. Massicot* (2002) 97 Cal.App.4th 920, 926 [dictionary definition of expose is "to cause to be visible or open to view"].)

We thus turn to the Proposition 65 regulations to help inform our interpretation of the term. Regulations section 25102, subdivision (i) defines "expose" as "to cause to ingest, inhale, contact via body surfaces or otherwise come into contact with a listed chemical. An individual may come into contact with a listed chemical through water, air, food, consumer products and any other environmental exposure as well as occupational exposures."

The Health and Welfare Agency explained its reasoning for this definition in its January 1988 Final Statement of Reasons. (Health & Welf. Agency, Final Statement of Reasons, 22 Cal. Code Regs., Div. 2 (Jan. 1988) p. 29 (1988 FSOR).) "Because the Act was titled the Safe Drinking Water and Toxic Enforcement Act of 1986 and because its earliest substantive provision is a prohibition on certain discharges to drinking water, there has been some confusion over the scope of the prohibition on exposing individuals to certain chemicals without first giving clear and reasonable warning. It has been assumed by some that this exposure prohibition, like the prohibition on

9

certain discharges or releases in the Act, is directed at drinking water exposure.  There is nothing in the language or the history of the Act to support such a limited interpretation of the exposure prohibition.  Therefore, the Health and Welfare Agency broadly defined the term 'expose' to include all anticipated means of bringing individuals into contact with chemicals.  Examples of these means are provided to further clarify that the Act prohibits all means of directly bringing individuals into contact with chemicals known to the state to cause cancer or reproductive toxicity without clear and reasonable prior warning." (*Ibid.*)

The original lead agency thus understood Proposition 65 to prohibit any act that *directly* brings a consumer into contact with a listed chemical.  (1988 FSOR, *supra*, p. 29.)  Other portions of the January 1988 FSOR are consistent with that interpretation.  Discussing the exposure prohibition in the context of agricultural products, the agency rejected any assumption that such an exposure occurs only on the date that a particular product is consumed.  (*Id.* at p. 9.)  It stated: "The term 'expose' generally means 'to lay open', as to something which is injurious or dangerous.  Laying an individual open to a chemical hazard through a consumer product could result from any act which propels the product toward the individual." (*Id.* at p. 19.)  The agency thus explained that the scope of the term could include conduct that "propels" the *product* towards a consumer, not the chemical hazard.  (*Ibid.*)

This interpretation is also consistent with the explicit purpose of Proposition 65.  The preamble to Proposition 65 states: "The people of California find that hazardous chemicals pose a serious potential threat to their health and well-being, that state government agencies have failed to provide them with adequate protection, and that these failures have been serious enough to lead to investigations by federal agencies of the

10

administration of California's toxic protection programs.  The people therefore declare their rights:  [¶] (a) To protect themselves and the water they drink against chemicals that cause cancer, birth defects, or other reproductive harm.  [¶] (b) To be informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm.  [¶] (c) To secure strict enforcement of the laws controlling hazardous chemicals and deter actions that threaten public health and safety.  [¶] (d) To shift the cost of hazardous waste cleanups more onto offenders and less onto law-abiding taxpayers." (Ballot Pamp., Gen. Elec. (Nov. 4, 1986) text of Prop. 65, p. 53.) Thus, Proposition 65 "is not primarily about punishment for harm that has been inflicted; it is about protection from harmful chemicals, the ability to make informed choices about coming into contact with such chemicals, and deterrence of conduct that undermines these purposes." (*Lee*, *supra*, 76 Cal.App.5th at p. 226.)  Interpreting the term "expose" in section 25249.6 to require a warning for any act that *directly* brings a consumer into contact with a listed chemical allows consumers to make such informed choices.

Here, EHA does not allege direct contact, but instead that individuals "*may* be exposed to marijuana smoke" if they use Sream's water pipe products with marijuana.  (Italics added.)  Requiring a warning for possible indirect contact, depending on how a consumer chooses to use the product, would introduce confusion into that decision-making process.  Consumers could, for example, interpret such a label on a water pipe to warn of direct exposure caused by the material the pipe is made of, or to warn of the effect of burning *any* substance on the pipe.  Such confusion does not advance the purpose of Proposition 65.

Given the definition of "expose" from Regulations section 25102, subdivision (i) and its related agency interpretation, we conclude that EHA's

11

allegations were insufficient to constitute a cause of action under section 25249.6. Contrary to EHA's contention, that determination was not based on "disputed factual findings." The complaint did not allege that Sream's water pipes can only be used with marijuana or require marijuana to function. EHA does not argue that it could make such allegations, only that it could "further explain that bongs are predominantly, *if not exclusively*, used to smoke marijuana and not for other non-exposure creating purposes." (Italics added.) EHA instead relies on its allegation that individuals "may be exposed to marijuana smoke" through "reasonably foreseeable use" of the water pipe products. Such allegations do not satisfy the agency definition and interpretation of the term "expose" and, as explained in part B, *post*, EHA presents no basis for application of a "reasonably foreseeable use" standard to this term.

EHA's other arguments to the contrary do not alter this conclusion. EHA contends that the standard adopted by the trial court was contrary to (1) the remedial nature of Proposition 65; (2) the "reasonably foreseeable use" standard in Regulations section 256001, subdivision (e); and (3) opinion letters of the Attorney General. We address each in turn.

## A. *Remedial Nature of Proposition 65*

EHA argues that the trial court "did not acknowledge or address the remedial nature of Proposition 65 or address why it was appropriate to narrowly construe Proposition 65's warning requirements for bong products." " 'Proposition 65 is a "right to know" statute requiring companies that expose consumers to carcinogens or reproductive toxins to provide a reasonable and clear warning.' " (*Lee, supra,* 76 Cal.App.5th at p. 226.) " 'It is a remedial law, designed to protect the public, and thus we construe its provisions broadly to accomplish that protective purpose.' " (*Ibid.*) We recognize,

12

however, that this purpose would be stymied by an overly broad interpretation of the statute not supported by its language or governing regulations. Indeed, the "proliferation of unnecessary warnings ' "could distract the public from other important warnings on consumer products.' " (*Mateel Environmental Justice Foundation v. Office of Environmental Health Hazard Assessment* (2018) 24 Cal.App.5th 220, 241.) "[O]verwarning may have the additional pernicious effect of causing users and consumers to ignore the warnings and possibly reducing the efficacy of warnings generally." (*Ibid*.) The California Supreme Court has noted this issue in the product liability context: "Not all warnings, however, promote user safety. Requiring manufacturers to warn their products' users in all instances would place an onerous burden on them and would ' "invite mass consumer disregard and ultimate contempt for the warning process." ' " (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 70.) Moreover, as explained above, there is potential for heightened consumer confusion here by requiring a warning that is only relevant *if* the consumer chooses to use Sream's water pipe in a certain way.

## B. *"Reasonably Foreseeable Use" Standard*

EHA also argues that Proposition 65 requires a warning for exposure to a chemical stemming from "reasonably foreseeable use" of the product. To support this position, EHA relies on the definition of "consumer product exposure" provided in article 6 of the Proposition 65 regulations as "an exposure that results from a person's acquisition, purchase, storage, consumption, or any reasonably foreseeable use of a consumer product, including consumption of a food." (Regs. § 25600.1, subd. (e).) Such reliance is misplaced. Regulations section 25600, subdivision (a), explicitly states:

13

"Nothing in Article 6 shall be interpreted to determine whether a warning is required for a given exposure under Section 25249.6 of the Act."

As the Health and Welfare Agency explained in its 1988 RFSOR: "The definition of 'consumer products exposure,' however, is not intended to establish when an exposure occurs. It is intended to address the availability of the 'safe harbor' warning. The term 'expose' is defined elsewhere as meaning 'to cause to ingest, inhale, contact via body surfaces or otherwise come into contact with a chemical.' (22 C.C.R. § 12201(f).)" (1988 RFSOR, *supra*, p. 10.) As expressed in both the regulations and related agency interpretation, we conclude that the "reasonably foreseeable use" element of Regulations section 25600.1, subdivision (e) does not apply to the term "expose" in section 25249.6.

We reached the same conclusion in *Lee*. In that case, a consumer filed a Proposition 65 action against Amazon for offering third-party skin-lightening face creams alleged to contain mercury without a warning. (*Lee*, *supra*, 76 Cal.App.5th at p. 209.) After a bench trial, the court ruled in favor of Amazon upon concluding that Lee had failed to establish several elements of his Proposition 65 claim. (*Lee*, at p. 212.) Relying on the "consumer product exposure" definition, the trial court found that Lee was required to prove actual exposure and had failed to do so because he had not proven that purchasers of the products had actually used them. (*Id.* at p. 245.) We explained that the "consumer product exposure" definition "provides less insight into the meaning of 'expose' as used in Health and Safety Code section 25249.6 than the trial court attributed to it." (*Ibid.*) We ultimately concluded that evidence of actual use (or "realized exposure") was not necessary to establish the "expose" element, as potential exposure from a purchased product being used in the intended manner was sufficient. (*Id.* at

14

pp. 247, 250.)  We reasoned that a contrary interpretation would "absolve a business that knowingly and intentionally, without warnings, sold a product whose intended use would necessarily cause the consumer to ingest, inhale or otherwise come into bodily contact with a listed chemical, if the consumer happened *not* to use the product he or she purchased," which cannot be squared with the purpose of Proposition 65.  (*Lee*, at p. 248.)  The facts of *Lee* are distinguishable because the face cream products themselves were alleged to contain a listed chemical, and thus the use of the purchased face cream would "necessarily cause" exposure to the chemical.  (*Ibid.*)  In that scenario, *Lee* concluded that the potential exposure from a purchased product was sufficient to satisfy the term "expose."  (*Id.* at p. 250.)  Here, unlike *Lee*, there are no allegations that Sream's water pipe products "necessarily cause" exposure to marijuana smoke.  (*Id.* at p. 248.)

Beyond Regulations section 25600.1, EHA argues that the "reasonably foreseeable use" standard should govern the term "expose" for three other reasons.  First, EHA argues that the inclusion of the term "knowingly" in section 25249.6 "incorporates a foreseeability and constructive knowledge standard."  We addressed this "knowingly" element in *Lee*, as the trial court had determined that the element required proof of Amazon's actual knowledge that the face cream products contained mercury.  (*Lee*, *supra*, 76 Cal.App.5th at p. 228.)  We interpreted the "knowingly" element to include constructive knowledge, consistent with the agency interpretation in the 1988 RFSOR.  (*Lee*, at pp. 230, 236; 1988 RFSOR, *supra*, p. 39 ["The Agency interprets the requirement that exposures be 'knowing and intentional' to include exposures about which there is constructive knowledge"].)  More recent agency interpretation may also support application of a foreseeability standard for the "knowingly" element.  The 2016 FSOR states:  "If a person's

15

use of a product is 'reasonably foreseeable" even if it is not entirely consistent with label recommendations, any resulting exposures to listed chemicals can properly be considered to be 'knowing and intentional' on the part of the product manufacturer, and are therefore subject to Proposition 65." (2016 FSOR, *supra*, p. 31.)  But nothing in *Lee* or the 2016 FSOR regarding the "knowingly" term compels a standard for the "expose" term that is contrary to the agency's definition and interpretation that the element prohibits any act that directly brings a consumer into contact with a listed chemical.  EHA's allegation that consumers may be exposed to marijuana smoke through reasonably foreseeable use of Sream's products, depending on how the consumers choose to use that product, is insufficient to satisfy the exposure requirement of section 25249.6.

Second, EHA argues that the Proposition 65 regulations reference "responsibility" for an exposure and that concept "is similar to and should be read in harmony with 'foreseeability,' as foreseeability addresses to what extent one will be held legally responsible for a certain result."  Again, this argument conflates the "knowingly" and "expose" elements of section 25249.6.  As the agency interpretation in the 1988 RFSOR states:  "use of the term 'foreseeable' is intended to define the limits of that constructive knowledge and of exposures for which businesses can reasonably be held responsible." (1988 RFSOR, *supra*, p. 39.)

Third, EHA cites *Consumer Cause, Inc. v. Arkopharma, Inc.* (2003) 106 Cal.App.4th 824 (*Consumer Cause*) to argue that courts "have also looked at 'actual use' of the product in determining if a Proposition 65 warning is required" and that such a standard "is similar to, if not broader than, foreseeable use."  *Consumer Cause* explained that the " 'actual use' " test (not "mere possibility of use") is applied to determine whether a product is fit for

16

beverage use, and thus requires a Proposition 65 warning for " 'ethyl alcohol in beverages.' " (*Consumer Cause*, at p. 830; Regs., § 27001, subd. (c).) That test is inapposite here.

## C. *Attorney General Opinion Letters*

Finally, EHA argues that the trial court's ruling "cannot be squared with the positions taken by the California Attorney General who is in charge of filing Proposition 65 cases and supervising private enforcement actions like this one." A private action may be commenced for an alleged violation of section 25249.6 where (1) 60-day notice is provided to the alleged violator, the Attorney General, district attorneys and city attorneys in the jurisdiction where the violation occurred; and (2) no public official has already commenced prosecution of the same violation. (§ 25249.7, subd. (d).) "If, after reviewing the factual information sufficient to establish the basis for the certificate of merit and meeting and conferring with the noticing party regarding the basis for the certificate of merit, the Attorney General believes there is no merit to the action, the Attorney General shall serve a letter to the noticing party and the alleged violator stating the Attorney General believes there is no merit to the action." (*Id.*, subd. (e)(1)(A).)

In 1995, the Attorney General issued a letter in response to a notice alleging that "an entity that manufactures, distributes, or sells 'dry clean only' clothing" violated Proposition 65 because it was responsible for exposures to perchloroethylene, a solvent used for dry cleaning. (Regs., § 27001, subd. (b) [also known as tetrachloroethylene].) It explained that while the clothing manufacturer "indeed knows that the exposure will occur, it is an indirect consequence of the intended use of the product. We think, however, that the exposure is more directly the result of 'receiving a consumer service,' i.e., dry cleaning, than the result of the purchase of the

17

garment." While there is no intervening service provider (like the dry cleaner) here, the basis for the Attorney General's reasoning still applies: marijuana smoke is an *indirect consequence* of the purchase of Sream's water pipe, if the consumer chooses to use it to smoke marijuana.

As the question about " 'dry clean only' clothing" raised "a number of issues concerning the responsibility for exposures where the exposure results in some way from the interaction of two or more products or services," the Attorney General also "decided to address the issues more broadly" through different scenarios. It stated that the provider of a gas-powered lawn mower is responsible for an exposure to benzene. "While not actually a product of combustion, the combustion process and subsequent venting of engine exhaust in the vicinity of the operator convert the benzene from a liquid form in which exposure would be minimal, into a gas form, or at least particles carried in a gas." On the other hand, the manufacturer of a "passive vessel" is not responsible for an exposure. "For example, the provider of a champagne glass is not responsible for exposure to alcoholic beverages consumed from the glass, even though such exposure is the result of the known and intended use of the product. The provider of the vessel has done nothing to increase the level of exposure to the listed chemical, but has simply provided an item that is necessary or helpful in use of the product that actually contains the listed chemical."

In 1997, the Attorney General issued a letter regarding diesel vehicles. It explained that manufacturers of diesel vehicles are not responsible for providing public warnings of environmental exposures "resulting from operation of such trucks in circumstances where the violations are within the control of the operator but not the manufacturer." It concluded, however, that the manufacturers "would remain responsible for consumer exposures,

such as exposures occurring to drivers and operators of diesel trucks" based on diesel engine exhaust resulting from the vehicle's normal emissions.

We are not convinced that the gas-powered lawn mower, diesel trucks, or champagne glass examples are directly on point here. Unlike the gas-powered lawn mowers or diesel trucks, EHA has not alleged that Sream's water pipe products necessarily use marijuana and or require marijuana to function. Like the champagne glass, a water pipe may be "helpful" in the consumption of a listed chemical. But a water pipe is not a "passive vessel" in the same way as a champagne glass. Unlike the glass, a water pipe does not play a purely passive role because it can be used in a manner that ultimately creates the listed chemical: marijuana smoke.

In 2011, however, the Attorney General issued a letter in response to notices alleging consumers were exposed to alcoholic beverages associated with alcohol abuse through the sale of " 'alcoholic drinking games and novelties' " that include " 'beer pong' game sets, folding tables decorated with the logos of sports teams, containers from which to drink liquids, and ping pong balls." The notices alleged that such exposure "occurs through the 'normal, foreseeable, and intended use of the products.' " The Attorney General urged the withdrawal of such notices, analogizing these products to its previous champagne glass example. It concluded that Proposition 65 does not require a warning for objects that are "commonly used to hold alcoholic beverages or may be used at the time individuals are consuming alcoholic beverages."

As a preliminary matter, these Attorney General letters clearly reject the "foreseeability" test that the EHA advances here. Moreover, in the letter regarding beer pong game sets and other " 'alcoholic drinking games and novelties,' " the Attorney General interpreted its "passive vessel" rule to

19

include products that may have an indirect effect on the consumption of a listed chemical (alcoholic beverages, when associated with alcohol abuse) depending on how consumers use the product. The trial court's ruling here is consistent with that interpretation.[7]

In sum, we conclude that the trial court did not err in finding EHA had alleged insufficient facts for its Proposition 65 claim and granting the motion for judgment on the pleadings.

## II. No Abuse of Discretion in Denying Leave to Amend

EHA argues that, even if the motion for judgment on the pleadings was properly granted, the trial court abused its discretion in denying leave to amend. In answering this question, we must consider whether there is a " 'reasonable possibility' " that the defect can be cured by amendment: if so, the denial constitutes an abuse of discretion. (*Gami v. Mullikin Medical Center* (1993) 18 Cal.App.4th 870, 876.) " 'The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

EHA has not met its burden. As described above, EHA does not offer any proposed additional allegations to show that Sream's water pipe products *directly* bring consumers into contact with marijuana smoke. It does not suggest that Sream's water pipe products necessarily emanate marijuana smoke or require marijuana to function. Instead, EHA continues to rely on

---

[7] EHA requested that we take judicial notice of a consent judgment against power tool manufacturers "for failing to warn about exposure to chemicals contained in wood dust" to support its argument that products "need not necessarily" emanate a listed chemical to support Proposition 65 liability. As explained above, we denied that request. Moreover, "a consent decree gives effect to a compromise that is not necessarily required by law," and thus we do not interpret it as such. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 576, fn. 7.)

20

its previously alleged "foreseeability" standard to argue that it could "further explain that bongs are predominantly, *if not exclusively*, used to smoke marijuana and not for other non-exposure creating purposes." (Italics added.) EHA also suggests it could articulate how water pipes "maximize exposure to marijuana smoke." Such allegations would still be insufficient because they relate to a possible *indirect* consequence, depending on how consumers choose to use the water pipes. We thus conclude that the trial court did not abuse its discretion in denying EHA's request for leave to amend.

## DISPOSITION

The judgment is affirmed. Sream is entitled to its costs on appeal.

21

_____
Mayfield, J.*

We concur:

_____
Richman, Acting P.J.

_____
Stewart, J.

*Environmental Health Advocates, Inc. v. Sream, Inc.* (A163346)

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                          Alameda County Superior Court

Trial Judge:                          Hon. James Reilly

Attorneys for Appellant:              Nicholas & Tomasevic, LLP
                                      Shaun A. Markley
                                      Craig M. Nicholas
                                      Jake W. Schulte

                                      Glick Law Group, PC
                                      Noam Glick

Attorneys for Respondent:             Environmental General Counsel, PC
                                      Catherine W. Johnson
                                      Julia S. Thrower

Attorneys for Amicus Curiae
Bio Hazard, Inc. on behalf of
Respondent:                           Stern & Goldberg
                                      Alan N. Goldberg
                                      Peter A. Tran